**Robert A. MAHEU and Frank W. Gay, Plaintiffs,**

v.

**REYNOLDS & CO. et al., Defendants.**

**No. 66 Civ. 1445.**

United States District Court
S. D. New York.

Dec. 22, 1967.

On Motion for Reargument
March 12, 1968.

Chester C. Davis, New York City, for plaintiffs, Paul J. Goldberg, New York City, of counsel.

Townsend & Lewis, New York City, for defendants, Eliot H. Lumbard, Gregor F. Gregorich, Daniel E. Kirsch, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Defendants move, pursuant to the United States Arbitration Act (9 U.S.C. §§ 1–14), for an order compelling arbitration in Los Angeles, California, or, in the alternative for an order, pursuant to 28 U.S.C. § 1404(a), transferring this action to the United States District Court for the Central District of California. If defendants' motion to compel arbitration in Los Angeles, California, is·denied, and the motion for transfer is denied, defendants seek an order compelling arbitration in New York. Defendants further move, pursuant to Rules 30(b) and 45 (b), F.R.Civ.P., for an order modifying the subpoena duces tecum issued by plaintiffs on April 18, 1967 and limiting the "Schedule For Production of Documents" (the schedule) attached thereto. Defendants' motion for an order compelling arbitration in Los Angles, California or in New York City, and for an order transferring this action to the United States District Court for the Central District of California, is denied. Defendants' motion with respect to the subpoena duces tecum and the schedule is granted in part and denied in part.

Plaintiffs Maheu and Gay are residents of Los Angeles, California. In June 1965, they opened a joint commodi-

ties account in Los Angeles with defendant Reynolds & Co. (Reynolds). Reynolds is a limited partnership organized under the laws of New York engaged in the business of buying and selling securities and commodity futures contracts on its own behalf and on behalf of its customers through the facilities of the New York Stock Exchange, the American Stock Exchange, the Chicago Board of Trade and other exchanges in the United States of which Reynolds is a member firm. The individual defendants are general partners of Reynolds.[1]

On June 25, 1965 plaintiffs executed a "Joint Account" agreement with Reynolds, and between June 25, 1965 and September 22, 1965 purchases and sales of commodity futures contracts were made by Reynolds in the joint account. On August 1, 1965 plaintiffs executed a "Customer's Agreement" which was signed by Reynolds on August 11, 1965.

On May·18, 1966 plaintiffs instituted this action seeking to recover losses of $43,528.25, which they claim they sustained in the joint account, and "lost profits" of $287,192.50. Jurisdiction is claimed under Section 22(a) of the Securities Act of 1933 (the 1933 Act) (15 U.S.C. § 77v(a)); Section 27 of the Securities Exchange Act of 1934 (the 1934 Act) (15 U.S.C. § 78aa); and 28 U.S.C. §§ 1331 and 1337.

The complaint alleges that in June 1965 an employee of Reynolds induced plaintiffs to open a "discretionary commodities account" with Reynolds, making the following representations:

1) partners of Reynolds in charge of the department responsible for trading commodity futures contracts would, in all respects, manage plaintiffs' account for plaintiffs' benefit;

2) substantial profits could be made by trading in commodity futures contracts; and,

3) plaintiffs' account would be managed so as to limit exposure to loss to $5,000.

Plaintiffs contend that in reliance on these representations, they opened the joint account with Reynolds; that Reynolds undertook to manage and supervise the account in all respects; and that the joint account was an "investment contract" and hence a "security" within the meaning of Section 2(1) of the 1933 Act (15 U.S.C. § 77b(1)) and Section 3(a) (10) of the 1934 Act (15 U.S.C. § 78c(a) (10)).

Plaintiffs further allege in their complaint that Reynolds:

1) "churned" the joint account, engaging in trading disproportionate to the size of the account, and operated the account primarily for the purpose of creating commissions and benefiting itself to the detriment of plaintiffs;

2) failed to use qualified persons to manage the account, managed the account negligently, and managed and traded the account in a manner that was inconsistent with the manner in which other accounts were managed.

The complaint alleges that Reynolds utilized the mails and instruments of transportation and communication in interstate commerce and that Reynolds' handling of the joint account violated:

1) Section 5(a) (1) and (c) of the 1933 Act (15 U.S.C. § 77e(a) (1) and (c));

2) Sections 12(2) and 17(a) (2) of the 1933 Act (15 U.S.C. § 77L(2) and 77q(a) (2));

3) Section 17(a) (3) of the 1933 Act (15 U.S.C. § 77q(a) (3));

4) Section 10(b) of the 1934 Act (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. § 240.10b–5);

5) Section 4b(A) and (C) of the Commodity Exchange Act (7 U.S.C. § 6b (A) and (C));

6) defendants' fiduciary duty to plaintiffs.

Defendants contend that the issues presented by the complaint must be submitted to arbitration under paragraph

---

**I.** Defendants deny that the Estate of William E. Hollan is a general partner.

14 of the "Customer's Agreement" which provides in relevant part:

"Any controversy between us arising out of or relating to this contract or the breach thereof shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Arbitration Committee of the New York Stock Exchange, as I may elect. * * * Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction. It is understood and agreed that the arbitrators appointed pursuant to the provisions hereof shall be required fully to conform with the laws of the State of New York in arriving at their determination with respect to the issues of any controversy submitted to them hereunder."

Paragraph 16 of the "Customer's Agreement" provides in relevant part:

"This agreement and its enforcement shall be governed by the laws of the State of New York and its provisions shall be continuous; shall cover individually and collectively all accounts which I may open or re-open or have any interest in whatsoever with you, * * *."

Defendants urge that the joint account is not a "security" under the 1933 or 1934 Acts, pointing out that the account involved the purchase and sale of commodity futures contracts which have been held not to be "securities." Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 253 F.Supp. 359 (S.D.N.Y. 1966).

■ Both the 1933 Act and the 1934 Act define a "security" to include an "investment contract." Section 2(1) of the 1933 Act (15 U.S.C. § 77b(1)) and Section 3(a) (10) of the 1934 Act (15 U.S.C. § 78c(a) (10)). In S. E. C. v. W. J. Howey Co., 328 U.S. 293, 298–299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), the Supreme Court held that for purposes of the 1933 Act, an "investment contract" means "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, * *." Plaintiffs allege that the joint account was managed and supervised in all respects by Reynolds, and for purposes of this motion, the allegations of the complaint must be taken as true. See Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D.N.Y.1965). Therefore, under the Supreme Court's holding in S. E. C. v. W. J. Howey Co., supra, the joint account constituted an "investment contract" and a "security." See Tcherepnin v. Knight, 389 U.S. 322, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); S. E. C. v. Crude Oil Corp., 93 F.2d 844 (7th Cir. 1937); S. E. C. v. Latta, 250 F.Supp. 170 (N.D.Calif.1965), aff'd per curiam, 356 F.2d 103 (9th Cir.), cert. denied, 384 U.S. 940, 86 S.Ct. 1459, 16 L.Ed.2d 539 (1966); cf. Lorenz v. Watson, 258 F.Supp. 724 (E.D.Pa.1966). Accordingly, the court may not compel arbitration (see Wilko v. Swan, supra; Stockwell v. Reynolds & Co., supra; Reader v. Hirsch & Co., 197 F.Supp. 111 (S.D.N.Y.1961); compare Robinson v. Bache & Co., 227 F.Supp. 456 (S.D.N.Y. 1964)), and it is not necessary to decide whether commodity future contracts constitute securities. Compare Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., supra.

■ Turning to defendants' motion for a transfer to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404 (a), "for the convenience of parties and witnesses, in the interest of justice," defendants, the moving parties, have the burden of showing that the transfer is warranted, and unless the balance of conveniences clearly favors the defendants, plaintiffs' choice of forum will not be disturbed. See, e. g., S. E. C. v. Golconda

Mining Co., 246 F.Supp. 54 (S.D.N.Y. 1965); compare Gallen v. Howard D. Johnson Co., 271 F.Supp. 680 (S.D.N.Y. 1967).

It appears that defendants' attorney wrote to plaintiffs' attorney on June 16, 1966 as follows:

"I record the understanding we reached today regarding the procedural steps to be taken in connection with the *Maheu* litigation.

\*　　\*　　\*　　\*　　\*　　\*

"(2) A motion addressed to the federal complaint will be served upon you during the week of August 15th. It will be made returnable at a mutually agreeable date, giving due consideration to the time you may need to prepare opposition papers.

\*　　\*　　\*　　\*　　\*　　\*

"(4) You will retain priority in the taking of depositions which shall not commence until the determination of the motion in the federal case."

This letter indicates that defendants were disposed to defend the action in this court.

Defendants now state that the employees of Reynolds familiar with the joint account live in and around Los Angeles, that all transactions in the account were initiated in Reynolds' Los Angeles office, that the account was serviced in that office where all pertinent records are located, and that all plaintiffs' correspondence was with that office.

On the other hand, Reynolds' principal place of business is in the Borough of Manhattan, New York City, and the majority of the individual defendants reside or work in this district. Plaintiffs state that all communications from Reynolds to them with respect to the joint account came from Reynolds' New York office; that relevant documents are in New York; and that New York witnesses will be called at the trial on such issues as whether the individual defendants are liable as "controlling persons" (Section 15 of the 1933 Act and Section 20 of the 1934 Act (15 U.S.C. §§ 77o and 78t)),

whether the joint account was managed or supervised by persons in Reynolds' New York office, and on the information available to Reynolds with respect to the commodity markets during the period of the joint account.

■ In view of the foregoing, defendants have not made a sufficient showing to warrant the transfer of this action to the United States District Court for the Central District of California.

The remainder of defendants' motion with respect to the subpoena duces tecum and the schedule, is disposed of as fol· lows:

### The Subpoena

The depositions of employees of Reynolds who live and work in California will be taken in California, at a time (within 60 days of the order to be entered herein) and place, to be stated in the order, unless the parties agree on another time and place for the taking of such depositions. The travel and living expenses of the attorneys will be paid by the respective parties, and the prevailing party at trial may include reasonable expenses in its bill of costs.

The depositions of the other employees of Reynolds will be taken in New York, at a time (within 60 days of the order to be entered herein) and a place, to be stated in the order, unless the parties agree on another time and place for the taking of such depositions.

With respect to the time and place for the taking of depositions of employees who live and work in California and of other employees, the order to be entered herein may be modified on a showing of good cause.

### The Schedule

Unless the parties otherwise agree as to the place for production of documents, copies of the documents specified in the following paragraphs of the schelude will be produced in New York, N. Y., at the time and place to be specified in the order to be entered herein (plaintiffs to bear the expense of copying): 1(a); 2

(c), (d), (e) and (g); 10; 13; and 9(a) and (b) without giving the names of customers, other than plaintiffs.[2]

Settle order on notice.

## MEMORANDUM ON MOTION FCR REARGUMENT

Defendants move for an order granting reargument of their motion for an order compelling arbitration which motion was denied by memorandum decision filed December 22, 1967. In its memorandum decision, the court denied defendants' motion on the ground that taking the allegations of plaintiffs' complaint as true, plaintiffs' joint account with Reynolds & Co. (Reynolds) constituted an "investment contract" and a "security" within Section 2(1) of the Securities Act of 1933 (the 1933 Act) (15 U.S.C. § 77b (1)) and Section 3(a) (10) of the Securities Exchange Act of 1934 (the 1934 Act) (15 U.S.C. § 78c (a) (10)). Therefore, plaintiffs' complaint presented issues arising under the 1933 Act and the 1934 Act, and the court could not compel arbitration under paragraph 14 of the "Customer's Agreement" between plaintiffs and Reynolds. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Reader v. Hirsch & Co., 197 F.Supp. 111 (S.D.N.Y.1961). Defendants' motion for reargument is denied.

Defendants urge that for the purpose of determining whether the issues presented by plaintiffs' complaint must be submitted to arbitration, the court should have accepted defendants' contentions as to the facts alleged in plaintiffs' complaint and should not have taken the allegations of the complaint as true. Defendants cite, such cases as Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 70 F.2d 297 (2d Cir. 1934), aff'd, 293 U.S. 449, 55 S.Ct. 313, 79 L. Ed. 583 (1935); Younker Brothers, Inc. v. Standard Construction Co., 241 F. Supp. 17 (S.D.Iowa 1965); Hiller v. Liquor Salesmen's Union Local No. 2, 226 F.Supp. 161 (S.D.N.Y.), reversed, 338 F.2d 778 (2d Cir. 1964); Metal Polishers Union Local No. 90 v. Rubin, 85 F.Supp. 363 (E.D.Pa.1949); Petition of Pahlberg, 43 F.Supp. 761 (S.D.N.Y.), appeal dismissed, 131 F.2d 968 (2d Cir. 1942). In these cases, the issue was whether arbitration was required under a valid arbitration clause, whereas here the issue is whether the provision for arbitration in paragraph 14 of the "Customer's Agreement" is valid in view of the Supreme Court's decision in Wilko v. Swan, supra.

On defendants' motion for an order compelling arbitration, the allegations of plaintiffs' complaint determine whether or not issues are presented which arise under the 1933 Act and the 1934 Act (Wilko v. Swan, supra; Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D.N.Y.1965); Reader v. Hirsch & Co., supra),[1] and therefore, for the purpose of determining defendants' motion, the allegations of plaintiffs' complaint must be taken as true. There is no need for an evidentiary hearing, requested by defendants, to decide the factual issues

---

2. As to the remaining paragraphs in the schedule:

   a) Defendants have agreed to produce for inspection and copying at the offices of Reynolds in New York, the documents specified in the following paragraphs of the schedule: 4(a), (b); 5(a), (b); and 14;

   b) Plaintiffs have withdrawn their demand with respect to paragraphs 2(a), (b), (f); and 3;

   c) Defendants state that the documents specified in the remaining paragraphs of the schedule (viz., 1(b), (c); 4(c); 6; 7(a)–(j); 8; 11; 12; and 15) do not exist.

1. In Wilko v. Swan, defendants moved prior to answering the complaint for a stay of the action pursuant to 9 U.S.C. § 3 and the Court held an agreement to arbitrate invalid since the agreement had been entered into before the controversy arose and the controversy involved issues arising under the 1933 Act. Similarly, in Stockwell v. Reynolds & Co. and Reader v. Hirsch & Co., agreements providing for arbitration were inapplicable by reason of the allegations made in the complaints filed in those actions.

raised by the allegation that the joint account was discretionary and was managed and supervised in all respects by Reynolds. These are factual issues to be determined at trial.

■ According to the complaint, plaintiffs invested their money in a discretionary joint account, expecting profits solely from the efforts of Reynolds in managing it. Defendants urge that even if the joint account was managed and supervised in all respects by Reynolds, the joint account did not constitute an "investment contract" and a "security" within the meaning of Section 2(1) of the 1933 Act and Section 3(a) (10) of the 1934 Act because Reynolds did not offer to large numbers of similarly situated investors the opportunity to invest in a pooled fund or common enterprise. The joint account may constitute a security even if there was no pooling arrangement or common enterprise among investors. 1 Loss, Securities Regulation 489 (2d ed. 1961); see S. E. C. v. Payne, 35 F.Supp. 873 (S.D.N.Y.1940); S. E. C. v. Wickham, 12 F.Supp. 245 (D.Minn. 1935). According to Professor Loss, "the line [between what is a security and what is not] is drawn * * * where neither the element of a common enterprise nor the element of reliance on the efforts of another is present." 1 Loss, supra at 491.

In S. E. C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) reversing, 151 F.2d 714 (5th Cir. 1945), the following facts were stipulated and testified to without conflict in the District Court:

"All sales [made by the defendants] have been an out-right sale of a definitely identified tract of land. In no

instance has there been a sale of a right to share with others in the profits of land held in common with the defendant Companies or others.

\* \* \* \* \* \*

"In the care of each grove, as in the yield of the fruit, the cost of the care and the proceeds of the fruit may be, and are, definitely and distinctly accounted for with respect to the specific property owned by the individual." 151 F.2d at 715–716 n. 5.

The Fifth Circuit, relying upon the absence of a common enterprise, held that the defendants were not selling securities, stating that:

"Here it is quite clear that each purchaser looked for the income from his investment to the fruitage of his own grove and not to the fruitage of the groves as a whole. It is quite clear, too, that each purchaser's income was in no sense dependent upon the purchase or development of other tracts than his own except in the sense that as grove owners generally prospered, each owner of a grove would." 151 F. 2d at 717.

Similarly, the allegations of the complaint here indicate that plaintiffs were looking only to their own joint account for the profit they allege they expected from the efforts of Reynolds. The decision of the Fifth Circuit in W. J. Howey Co. was reversed, however, and the Supreme Court stated that "the transactions in this case clearly involve investment contracts * * *." 328 U.S. at 299, 66 S.Ct. at 1103.

■ Since plaintiffs' complaint presents issues arising under the 1933 Act and the 1934 Act, the court may not compel arbitration.[2]

**2.** Defendants contend that the 1933 Act and the 1934 Act do not apply because the joint account involved the purchase and sale of commodity futures contracts, governed by the Commodity Exchange Act (7 U.S.C. §§ 1–17), as amended effective June 18, 1968. The only case in point that the court has found bearing on defendants' contention is W. J. Abbott & Co. v. S.E.C., CCH Fed.Sec.L.Rep. ¶92,-

107 (W.D.Pa.1967), cited by plaintiffs, where the court held that a dealer in commodity futures contracts may be subject to the 1933 Act and 1934 Act even though trading in commodity futures contracts is regulated under the Commodity Exchange Act. See also S.E.C. v. Commodity Brokerage Co., 67 Civ. 105 (W.D.Pa.1967). The 1933 Act and the 1934 Act have been held applicable in

Plaintiffs' order submitted for settlement and signature on January 5, 1968 has been signed.

Defendants' motion for an order granting reargument of their motion for an order compelling arbitration is denied.

It is so ordered.

cases where both securities and commodity futures contracts were involved. Hecht v. Harris, Upham & Co., CCH Fed. Sec.L.Rep. ¶92,139 (N.D.Calif.1968); Goodman v. H. Hentz & Co., 265 F.Supp. 440 (N.D.Ill.1967); S.E.C. v. Wickham, supra; see also Sinva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 253 F.Supp. 359 (S.D.N.Y.1966).

Defendants have not shown that application of the 1933 Act and the 1934 Act in this action would conflict with the Commodity Exchange Act. In the absence of a conflict between the statutes, the 1933 Act and the 1934 Act are applicable even if the defendants are also subject to the Commodity Exchange Act. See generally Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).