Ella MILNARIK, Emily Milnarik, Florence Milnarik, Bruce Turnmire, Jean Milnarik, Ronald Milnarik, Marshall W. Milnarik, Plaintiffs,

v.

M–S COMMODITIES, INC., and David S. Nelson, Defendants.

No. 70 C 1338.

United States District Court, N. D. Illinois, E. D.

Oct. 26, 1970.

Moses, McGarr, Gibbons, Abramson & Fox, Chicago, Ill., for plaintiffs.

Arthur M. Mintz, of Mintz, Raskin & Louis, Chicago, Ill., Richard B. Michaels, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

This action presents the apparently novel question of whether or not a discretionary trading account in commodity futures is subject to the registration requirements of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e. For the reasons stated below, we conclude that it is not and grant defendants' motions to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted.

The salient allegations of plaintiffs' complaint, which are presumed true for purposes of this motion, are as follows: 1) the defendant M–S Commodities, Inc. was and is a broker trading in commodity future contracts and defendant David Nelson was its agent; 2) Nelson solicited from the plaintiffs approximately $13,500 which they deposited with him in a discretionary trading account in commodity futures; 3) the money was lost as a result of Nelson's discretionary trading; and 4) Nelson's solicitation was part of a nationwide scheme wherein defendants entered into contracts for discretionary trading accounts with various persons from numerous states. The plaintiffs do not charge defendants with any fraud, "churning" or other improper activity in the conduct of the account. They claim relief solely because of the failure of the defendants to register these discretionary accounts under the provisions of Section 5 of the Securities Act of 1933.

Defendants' motions to dismiss are predicated upon their assertion that commodity future contracts are not securities under the Securities Act, 15 U.S.C. § 77b. Plaintiffs urge in opposition that the securities which they contend were not properly registered were *the discretionary accounts* in commodity future contracts, not the future contracts themselves. They further note that the word "securities" is defined in the Securities Act of 1933 to include "investment contracts" [1] and that Judges Bonsal and Bryan of the Southern District of New York have both concluded [2] that, although commodity future contracts themselves are not securities within the ambit of the Securities Act, discretionary trading accounts in commodity futures are investment contracts and thus are subject to the provisions of that Act.[3]

These two cases present well-reasoned and careful analyses of the definition of "securities" and offer insight into the problems of defining a term so amorphous as "investment contract." [4] However, neither of these decisions resolves the specific issue presented in the instant litigation, i. e., the applicability of the registration requirements of the 1933 Act to discretionary accounts. In this connection, we will assume for purposes of decision on defendants' motions that an oral contract creating a discretionary trading account in commodity futures is, as the decisions previously referred to have held, an investment contract and therefore a "security" within the meaning of the 1933 Act.

---

1. 15 U.S.C. § 77b(1).

2. Maheu v. Reynolds & Co., 282 F.Supp. 423 (S.D.N.Y.1967), Berman v. Orimex Trading, Inc., 291 F.Supp. 701 (S.D.N.Y. 1968).

3. The Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, likewise defines "security" to include, *inter alia*, "investment contracts." 15 U.S.C. § 78c(a) (10). If a discretionary trading account in commodity futures is an investment contract and a security for purposes of the Security Act of 1933, it would likewise appear to be a security under the provisions of the Securities Exchange Act of 1934, including the anti-fraud provisions. 15 U.S.C. § 78j.

4. *Cf.*, Securities and Exchange Commission v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

Once a security is found to be within the purview of the Securities Act, it must be registered pursuant to 15 U.S.C. § 77e prior to any attempt to sell it publicly through use of the means or instrumentalities of interstate commerce. However, 15 U.S.C. § 77d(2) exempts from registration any transaction by an issuer not involving a public offering. We conclude that the creation of the discretionary account at issue here, even if such an account is an investment contract and thus a security, did not involve a transaction constituting a public offering and therefore is not subject to registration.

The nature of a discretionary trading account makes apparent the inapplicability of the criteria generally applied by courts in determining whether or not a securities offering is public. The reported decisions deal almost exclusively with sales of stock or other fractional interests in commercial ventures, even if cloaked in the guise of sales of property, where the criteria for determining whether the offering was public or private in nature have included 1) the number of shares in the offering, 2) their respective amounts, and 3) the manner of offering, as well as the more general determination of whether the persons affected stand in need of the protection and knowledge that would be gained if the offering had been properly registered.[5] In the instant case, the "security" with which we are dealing is the "investment contract" between the plaintiffs and Nelson creating the discretionary trading account. The "security" has not been, as in the more typical situation, issued by the defendant and sold to the plaintiff. Rather, the security as we are here defining it, is an oral agency agreement in which the theoretical "seller" becomes the agent of the "buyer." It is arguable that no transaction whatsoever has occurred solely as a result of the creation of the discretionary account since no interest of any kind has been "transferred" or "sold" to the "buyer." All that has happened is that the so-called "buyer" has transferred funds to the so-called "seller" and given him discretionary authority to enter into future transactions on the "buyer's" behalf.

In essence, this contract creates an agency-for-hire rather than constituting the sale of a unit of a larger enterprise. No matter how many different persons Nelson became an agent for under similar or even identical discretionary contracts, his relationship with each would remain as that of agent and principal. Each contract creating this relationship is unitary in nature and each will be a success or failure without regard to the others. Some may show a profit, some a loss, but they are independent of each other. No matter how many discretionary trading accounts Nelson may have had with other principals, the "security" "issued" to the plaintiffs, their discretionary trading account, could not be offered to anyone else. Although this Court recognizes that the registration requirements of Section 5 are for the protection of the public and that any exemption therefrom must be strictly construed against one claiming it, Securities and Exchange Commission v. Ralston Purina Co., *supra* note 5; Securities and Exchange Commission v. Culpepper, 270 F.2d 241 (2d Cir. 1959), the unitary nature of the contract here involved is not overcome even when the transaction is viewed most strongly against the defendants.

In an effort to avoid the necessary implications of the above facts, plaintiffs attempt to analogize from the many court

---

5. Securities and Exchange Commission v. Ralston Purina Co., 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1952), corporate shares offered to "key" employees of corporation; Garfield v. Strain, 320 F.2d 116 (10 Cir. 1963), partial interest in oil and gas lease; United States v. Custer Channel Wing Corp., 376 F.2d 675 (4 Cir. 1967), cert. denied 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119, 1,579,590 shares of corporate stock; Strahan v. Pedroni, 387 F.2d 730 (5 Cir. 1967), fractional shares of gas wells.

decisions wherein single sales of property or animals to many individuals were held to be investment contracts between each individual purchaser and the common seller and thus held to be securities.[6] The plaintiffs claim that the many individual sales of property by one seller in those cases were grouped together to reveal the public nature of the offerings; they claim that Nelson's contracting individually with many people should be viewed as a whole and thus the public nature of his offering should likewise become apparent.

This analogy fails for two reasons. The basic issue presented and resolved in the many prior decisions to which plaintiffs refer was whether or not a purported sale of property was in fact an investment contract and therefore a "security" and not whether its sale constituted a public offering. Moreover, the basis of these decisions is inconsistent with a finding that the instant discretionary account is part of a public offering. In these purported property sale cases, the courts, in finding the transactions to be investment contracts, relied specifically on the nature of the contracts and the schemes involved.

The courts, in substance, found these schemes to be attempts by promoters or entrepreneurs to create a pool of capital to be used in furthering a common enterprise by dividing up the needed base into units for individual sales. These plans, in other words, were all sales of units of a common enterprise no different in operating reality from the sale of stock by a corporation, only disguised under a veneer of property-sale terminology. Thus, although the sales of units of land in the citrus grove plus operational

contracts involved in *Howey, supra* note 4, purported to be outright sales from one individual to another (and thus no different than the situation here involved), the Supreme Court specifically found that the transfers involved much more than fee simple interest in land. Rather, the Court found a scheme whereby all the individuals "purchasing" the land in fact were contributing money to a common enterprise and were expecting to claim their respective profits from the operations of the entire citrus grove; the resulting transfer of rights in land was considered to be purely technical. 328 U.S. 293, 299–300, 66 S.Ct. 1100, 90 L.Ed. 1244.

This characteristic of common enterprise is completely lacking in the present case. Even assuming that Nelson in fact solicited and collected money from numerous parties, no allegations are made that a common enterprise existed comprised of all people possessing discretionary account contracts with him. No claim is made that Nelson traded in a uniform manner for each of these accounts. Even if he had so uniformly traded, no pooling of funds for a common purpose is alleged. Nelson apparently was simply an agent for a number of separate and distinct principals, the plaintiffs being one such principal. The plaintiffs in no way can be viewed as having invested in a common enterprise with other suppliers of venture capital. Without such common investment, the property sale cases are not analogous.

■■ In this connection, it is also apparent that the creation of the discretionary account was not a public offering under the accepted criteria for determining whether or not a securities

---

6. *See, e. g.,* Securities and Exchange Commission v. W. J. Howey Co., *supra* note 4, sales of units in a large citrus fruit enterprise coupled with service contracts and land sale contracts; Blackwell v. Bentsen, 203 F.2d 690 (5 Cir. 1953), cert. denied 346 U.S. 908, 74 S.Ct. 240, 98 L.Ed. 406 (1953), sales of portions of 800 acre tract to be developed as citrus grove accompanied by separate contract with sellers for the latter to manage the property; Securities and Exchange Commission v. Payne, 35 F.Supp. 873, 878 (S.D. N.Y.1940), contract for sale of silver foxes by fox ranch operator together with agreements to care for foxes for purchasers. For other instances where purported sales of property have been held to be investment contracts, see Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 320 U.S. 344, n. 10, at p. 352, 64 S.Ct. 120, 88 L.Ed. 88.

offering is a public offering. For purposes of this discussion, we again assume that the discretionary trading account in commodity futures is a security as defined in the 1933 and 1934 Acts, that Nelson "issued" such security to plaintiffs, and that the standard criteria for determining a public offering are applicable. These criteria, as discussed *supra*, include the number, amount, and manner of the offering, and, finally, whether or not the particular class of persons affected will be beneficially protected by applying the Act to them. Securities and Exchange Commission v. Ralston Purina Co., *supra* note 5, 346 U.S. at p. 125, 73 S.Ct. 981, 97 L.Ed. 1494. Certainly the number, amount, and manner of the offering of this security to the plaintiffs negate any "public" tenor thereto. Nelson offered the plaintiffs a single agency contract totally unrelated to any other agency contract he might offer to others and the amount involved was only slightly more than $13,500.00. "The whole tenor of the Act indicates a congressional purpose to require an accompanying registration statement with the offer or sale of a conventional issue of securities to the general public or a particular class thereof, and to exempt isolated transactions from the burdens of registration requirements." Woodward v. Wright, 266 F. 2d 108, 115 (10 Cir. 1959). While an offering may be public when offered to many or to few, Securities and Exchange Commission v. Ralston Purina Co., *supra* note 5, at p. 125, 73 S.Ct. 981, 97 L. Ed. 1494, an offering has never been held to be a public offering when it has been extended to only one person.

■ The most significant single standard criterion in making the public versus private determination is the need of the persons affected for the information contained in a registration statement, i. e., whether there is any practical need for the Act's application. A perusal of the information required in the registration statement, 15 U.S.C. § 77aa, Schedule A, demonstrates the inapplicability of a typical registration statement to the instant situation. Required in any such statement, *inter alia*, are the following: the name of the state under which the issuer is organized; the names and addresses of all persons owning more than ten per cent of the stock of the issuer; a statement of the capitalization of the issuer; the amount of any funded debt to be created by the security offered; the purposes for which the funds received from the issuance of the security will be used; the price at which the security shall be offered to the public; the commissions to be paid to underwriters in respect of the sale of the offered security; a balance sheet showing all of the assets of the issuer; and a profit and loss statement of the issuer. Should this information have been required of Nelson, he would have listed in statement form: where he was organized; who owned stock in him; his capitalization; any funded debt resulting from the discretionary account; the fact that these incoming funds deposited in the discretionary trading account in commodity futures would be used for discretionary trading in commodity futures; the price at which the discretionary account was being offered; a balance sheet showing his personal assets; and a personal profit and loss statement from the prior year.

While the Commission could undoubtedly devise a special form, it is apparent that all of the information required in a typical registration statement by 15 U. S.C. § 77aa, Schedule A, is either totally inapplicable or would provide no information even plausibly relevant to the plaintiffs. No practical need or purpose thus exists for the application of the registration requirements of the Securities Act.

It should be noted that the Securities and Exchange Commission apparently is of the same opinion, i. e., that no public offering is involved in the creation of a discretionary brokerage account whether in securities or commodities since, we are advised, it has never proceeded against any broker or dealer soliciting and accepting such accounts solely for

failure to register under the Securities Act of 1933, even though such discretionary accounts have been in widespread use during the 37 years since the Act's enactment.[7]

Because plaintiffs claim relief solely because of the defendants' failure to register their discretionary trading account under Section 5 of the Securities Act of 1933, we find, for the aforementioned reasons, that their complaint fails to state a cause of action upon which relief can be granted. The complaint, therefore, is dismissed. An appropriate order will enter.

---

7. In addition to the lack of any real benefits that would have been afforded to the plaintiffs had this "security" been registered, there are obvious practical difficulties of administration that would flow from requiring such registration. The requisite factual listings needed in a registration statement for a discretionary account would be difficult to define and the Commission would find it equally arduous to enforce accurate registration. The administration of any such registration requirements would be at least as difficult to enforce over discretionary trading accounts as it would be over such other atypical types of securities as puts and calls, which the Commission has also never required to be registered under Section 5 precisely because of these practical difficulties of administration. See, generally, 1 Loss, Securities Regulation, pp. 467–469 (2d ed. 1961).