John J. WASNOWIC and Keystone Traders, Inc., Plaintiffs,

v.

CHICAGO BOARD OF TRADE et al.,
Defendants.

Civ. No. 69–328.

United States District Court,
M. D. Pennsylvania.

Nov. 17, 1972.

Levy, Preate & Purcell, Scranton, Pa., Warren, Hill, Henkelman & McMenamin, Scranton, Pa., Jenner & Block, Chicago, Ill., for plaintiffs.

James W. Scanlon, Scranton, Pa., Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for defendant Chicago Board of Trade.

Lee A. Freeman, Jr., Chicago, Ill., Albert H. Aston, Wilkes-Barre, Pa., for defendant Chicago Mercantile Exchange.

Joseph E. Gallagher, Scranton, Pa., for defendant J. Samuel Sicherman.

## MEMORANDUM AND ORDER

NEALON, District Judge.

Defendants have requested the court to reconsider its memorandum of December 30, 1970, in which the court denied defendants' motion to dismiss for lack of jurisdiction under the Securities Exchange Act of 1934 and for invalid service of process pursuant to § 27 of that Act. Defendants' motion was denied on the grounds that, in taking the allegations of plaintiffs' complaint as true, jurisdiction was proper in that the discretionary trading account in commodities futures that the plaintiffs had with J. Samuel Sicherman, trading as J. Samuel Sicherman & Co. (hereafter Sicherman), was an "investment contract" and hence a "security" within Section 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1) and Section 3 (a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10). In so ruling, the court relied on two decisions of the Southern District of New York, Berman v. Orimex Trading, Inc., 291 F. Supp. 701 (S.D.N.Y.1968) and Maheu v. Reynolds & Co., 282 F.Supp. 423 (S.D. N.Y.1967); reargument denied 282 F. Supp. 428 (1968), both apparently holding that a joint account in commodities futures may constitute a "security" even if there was no pooling arrangement or finding of a "common enterprise" as part of the agreement alleged to be a security. *See* Maheu v. Reynolds & Co., *supra* at 429.[1] *See also*, I Loss Securities Regulation 489 (2d Ed. 1961).

Defendants now raise for the first time [2] their contention that the "commonality" aspect of the Maheu and Berman decisions conflicts with the Supreme Court's definition of a security as announced in S. E. C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) and Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). In support of their contention, they request the court to reconsider its prior memorandum in light of the

[1]. In its memorandum, the court also cited a decision from the District of Minnesota, Anderson v. Francis I. duPont & Co., 291 F.Supp. 705 (1968). However, unlike *Maheu, supra, Anderson* did not involve a separate discretionary trading agreement between numerous customers, but rather, in that court's words ". . . an investment pool . . . [where] individual contributions to the investment fund would enable him (defendant) to increase profits for all members of the fund." Anderson v. Francis I. duPont & Co., *supra* at 708.

[2]. Defendants' first motion to dismiss was based on their contention (1) that plaintiffs were simply dealers in commodities futures contracts and that jurisdiction over commodities futures is within the exclusive purview of the Commodities Exchange Act of 1936 and not the Securities laws, and (2) venue was not proper here in that the defendant Exchanges were not present here, nor did they transact any business here.

recent Seventh Circuit opinion in Milnarik v. M–S Commodities, Inc., 457 F.2d 274 (7th Cir. 1972); cert. denied 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972), which held, contrary to *Berman and Maheu,* that absent a finding of a common enterprise among investors, a discretionary account in commodities futures is not a security within the meaning of the federal securities laws. Thus, the above-cited cases represent two divergent lines of·authority on this question. Inasmuch as I agree with defendants that the *Milnarik* court's requirement of finding a common enterprise is more consistent with the Supreme Court's definition of an "investment contract", a review of the facts and the analysis which that court used is in order.

In *Milnarik,* plaintiffs had opened a discretionary account with the defendant on the understanding that defendant would use the funds to trade in commodities futures for plaintiffs' benefit. After various trades on plaintiffs' account had resulted in losses, defendant demanded an additional sum to cover the losses. Plaintiffs refused and started an action in the Northern District of Illinois to rescind the agreement and recover their deposit plus interest, arguing that their commodities account was a "security" which should have been registered pursuant to Section 5 of the Securities Act of 1933. The District Court, after assuming the presence of a security, dismissed the complaint holding that the agreement resulted in a private rather than a public offering and, therefore, was not required to be registered. Milnarik v. M–S Commodities, Inc., 320 F.Supp. 1149 (N.D.Ill.1970). Without reaching the question whether the offering was public or private, the Seventh Circuit Court of Appeals agreed that registration was not required, holding that the arrangement between plaintiffs and defendant did not constitute a security. In reaching their decision, the court reviewed both *Howey* and *Tcherepnin* and observed that " . . . [j]udicial analyses of the question whether

particular investment contracts are 'securities' within the statutory definition have repeatedly stressed the significance of finding a common enterprise." Milnarik v. M–S Commodities, Inc., *supra,* 457 F.2d at 276. For example, in *Howey, supra,* the Supreme Court defined "security" as a

> "contract, transaction or scheme whereby a person invests his money in a *common enterprise* and is led to expect profits solely from the efforts of the promotor or a third party. . . ." (Emphasis supplied.)

S. E. C. v. Howey, *supra,* 328 U.S. at 298, 66 S.Ct. at 1103. And, in Tcherepnin v. Knight, *supra,* a case arising under the 1934 Act, the Court identified the existence of a common enterprise as an important aspect of their analysis:

> "Of the several types of instruments designated as securities by § 3(a)(10) of the 1934 Act, the petitioners' shares most closely resemble investment contracts. 'The test [for an investment contract] is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.' [S. E. C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244] at 301 [66 S.Ct. at 1104]. Petitioners are participants in a common enterprise—a money-lending operation dependent for its success upon the skill and efforts of the management of City Savings in making sound loans. Because Illinois law ties the payment of dividends on withdrawable capital shares to an apportionment of profits, the petitioners can expect a return on their investment only if City Savings shows a profit."

Tcherepnin v. Knight, *supra,* 389 U.S. at 338–339, 88 S.Ct. at 554. In applying the *Howey* test in *Milnarik,* the court found the common enterprise element to be totally lacking:

> "We find the element of commonality absent here. Although the complaint does allege that Nelson entered into similar discretionary arrangements

with other customers, the success or failure of those other contracts had no direct impact on the profitability of plaintiffs' contract. Nelson's various customers were represented by a common agent, but they were not joint participants in the same investment enterprise."

Milnarik v. M–S Commodities, Inc. *supra*, 457 F.2d at 276.

Further, the court quoted with approval the following excerpts from the district court's opinion describing the arrangement:

"In essence, this contract creates an agency-for-hire rather than constituting the sale of a unit of a larger enterprise. No matter how many different persons Nelson became an agent for under similar or even identical discretionary contracts, his relationship with each would remain as that of agent and principal. Each contract creating this relationship is unitary in nature and each will be a success or failure without regard to the others. Some may show a profit, some a loss, but they are independent of each other. No matter how many discretionary trading accounts Nelson may have had with other principals, the 'security' 'issued' to the plaintiffs, their discretionary trading account, could not be offered to anyone else."

"This characteristic of common enterprise is completely lacking in the present case. Even assuming that Nelson in fact solicited and collected money from numerous parties, no allegations are made that a common enterprise existed comprised of all people possessing discretionary account contracts with him. No claim is made that Nelson traded in a uniform manner for each of these accounts. Even if he had so uniformly traded, no pooling of funds for a common purpose is alleged. Nelson was apparently simply an agent for a number of separate and distinct principals, the plaintiffs being one such principal. The plaintiffs in no way can be viewed as having invested in a common enterprise with other suppliers of venture capital."

Milnarik v. M–S Commodities, Inc., 320 F.Supp. *supra* at 1151–1153.

■ This characterization of the agreement between the parties in *Milnarik* could equally be used to describe the arrangement between plaintiffs and Sicherman here. As in *Milnarik*, nothing in the instant complaint suggests the type of common enterprise or pooling of funds for a common purpose required to convert the discretionary account plaintiffs had with Sicherman into a statutory security. The complaint simply alleges that plaintiff Keystone Traders, Inc. engaged in "investment transactions managed and supervised by J. Samuel Sicherman & Co. as a 'discretionary commodity account' in the commodities market . . ." Plaintiffs' complaint, para. 1(d). Although, as in *Milnarik*, it is alleged that Sicherman had opened similar accounts with numerous customers, no claim is made that a joint enterprise existed comprised of a group of investors holding discretionary accounts with him. Indeed, the opposite appears to be the case. At various parts in the complaint, plaintiffs allege that Sicherman violated his duty to segregate and separately account for the funds in plaintiffs' account from other discretionary accounts. Plaintiffs' complaint, pars. 3, 10. And in plaintiffs' answer to defendants' renewed motion to dismiss, plaintiffs claimed that Sicherman failed to segregate customer's funds and had illegally placed them into "one big pot". Thus, it is clear that plaintiffs did not enter into discretionary trading agreements with Sicherman with the understanding that their customers would share ratably in the profits. Without the presence of this element of the *Howey* test, plaintiffs' individual discretionary trading account with Sicherman cannot be considered as a security within the meaning of the Securities laws.

■ Plaintiffs seek to avoid this result in several ways. First, they seek to distinguish *Milnarik* by arguing that

the issues in the two cases differ greatly, inasmuch as *Milnarik* dealt with whether the discretionary trading agreements had to be registered under Section 5 of the 1933 Act, whereas the instant action is based on the defendants' allegedly aiding and abetting Sicherman's fraudulent scheme in violation of the anti-fraud provisions of the 1934 Act. While the issues in the two cases do obviously differ, the ultimate question to be decided is the same. That question is whether discretionary trading agreements in commodities futures fit the definition of an "investment contract" within the meaning of the Securities Acts. As noted earlier, the Supreme Court in S. E. C. v. Howey, *supra* defined the term "investment contract" for purposes of the registration requirements of the 1933 Act. Later, in Tcherepnin v. Knight, *supra,* a case arising under the 1934 Act, the Court pointed out that the definition of a security in § 2(1) of the 1933 Act is virtually identical to the 1934 Act definition. For this reason the Court applied the *Howey* definition and referred to decisions under the 1933 Act for aid in construing the 1934 Act. Thus, whether the question of what is a security arises under the 1933 Act or the 1934 Act, the test to be applied is identical. *See* Milnarik v. M–S Commodities, *supra* 320 F.Supp. at 1150; Anderson v. Francis I. duPont & Co., *supra* 291 F.Supp. at 707.

■ Next, plaintiffs contend that even assuming that a finding of a common enterprise is an essential element in the definition of a security, that this element is present here. They seek to find the existence of a common enterprise in the relationship between plaintiff Keystone Traders, described as an open-ended investment company [3] and its more than 200 stockholders. However, the agreement which plaintiffs have alleged to constitute an "investment contract" is the discretionary account which Keystone Traders, as an individual customer, opened with Sicherman and not the agreement between Keystone Traders and its stockholders. The nature of the relationship between Keystone Traders and its own stockholders is totally unrelated to the nature of the discretionary commodity agreements between each plaintiff and Sicherman. Consequently, plaintiffs' attempt to find the existence of a common enterprise in the agreement between Keystone Traders and its stockholders is without merit.

■■ Finally, plaintiffs allege that, unlike *Milnarik* where defendant had segregated the funds of his customers, Sicherman's fraudulent commingling of his customers' funds when it was his duty to treat each discretionary account separately, provided the element of common enterprise lacking in *Milnarik.* What plaintiffs are arguing, in effect, is that an agreement which is not an "investment contract" can be transformed into an investment contract by the unilateral fraud of one party in violation of the original understanding. Whether an "investment contract" exists depends, like any other contract, upon the original intention of the parties to the arrangement. As noted earlier, plaintiffs' complaint makes it clear that it was not part of the original agreement

---

3. The purpose or purposes of the corporation are:

"To be and operate as an *open-end investment company*; to buy, sell, sell short, and in any other manner deal in commodities and commodity futures, including, but not limited to, soybeans, wheat, corn, rye, oats, lard, barley, flaxseed, cotton, cottonseed oil, crude soybean oil, soybean meal, wool tops, wool, burlap, sugar, coffee, cocoa, eggs, potatoes, hides, rubber, copper, zinc, lead, tin, platinum, silver and gold; to buy, sell, invest in, and in any manner deal in, stocks, bonds, mortgages, debentures, trust receipts, notes, and *other securities* and personal property of any sort, provided that the value of *investment securities* held by the corporation shall not equal or exceed forty percent (40%) of the corporation's total assets (exclusive of Government securities and cash items) on an unconsolidated basis; and to borrow money with or without security for any of the foregoing purposes." (Emphasis Supplied)

for Sicherman to commingle the funds of his customers into "one big pot", or that each would share proportionately in the profits from the common fund. Hence, while Sicherman's handling of plaintiffs' account may amount to a fraud upon them and a breach of his contract with them, it does not amount to the creation of an "investment contract" within the meaning of the federal securities laws. Accordingly, since jurisdiction does not exist under either the Securities Act of 1933 or the Securities Exchange Act of 1934, defendants' motion to dismiss must be granted and the complaint dismissed.