**Gordon ARNOLD et al.**

v.

**BACHE & CO., INC., and J. Samuel Sicherman, trading as J. Samuel Sicherman & Co.**

**Civ. No. 69–448.**

United States District Court,
M. D. Pennsylvania.

Sept. 27, 1973.

Laster, Strohl, Kane & Mattes, and T. Linus Hoban, Welles & McGrath, Scranton, Pa., for plaintiffs.

James W. Scanlon, Scranton, Pa., Sullivan & Cromwell, New York City, for defendants.

## MEMORANDUM

NEALON, District Judge.

Now before the Court is defendant Bache & Co., Inc.'s [1] (hereafter Bache) motion for judgment on the pleadings, or, in the alternative, for summary judgment in the above matter pursuant to Rules 12(c) and 56 of the Federal Rules of Civil Procedure. The named plaintiffs have brought this action on behalf of themselves and all others similarly situated who were customers of J. Samuel Sicherman and Co. (hereafter

Sicherman), to recover damages allegedly sustained by them as the result of a fraudulent scheme involving Sicherman's dealings in the commodities futures market.[2] Plaintiffs allege that defendant Sicherman accomplished his fraudulent scheme by making false representations to plaintiffs that purchases and sales of commodity futures contracts were being made with their money, when in fact they were never made, and by sending to plaintiffs false confirmation slips of these nonexistent purchases and sales.

The alleged liability of Bache is essentially that Bache is a controlling person within the meaning of § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) [3] and, as such, is jointly and severally liable with Sicherman for any violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j, S.E.C. Rule 10b–5, 17 C.F.R. § 240.10b–5, §§ 4b and 4d of the Commodity Exchange Act of 1936, 7 U.S.C. §§ 6b, 6d and the Rules and Regulations of the National Stock and Commodities Exchanges and the Board of Trade of the City of Chicago. Plaintiffs allege that defendant Bache aided and abetted Sicherman in his illegal operation by furnishing Sicherman with various facilities customary in commodities brokerage offices and by referring to Sicherman commodities business originating in Bache's Scranton office. Plaintiffs maintain that this activity, coupled with the sharing of brokerage fees and commissions on trades placed, created a public impression of endorsement both as to the skill and integrity of Sicherman and that the operation was backed by Bache. This endorsement, plaintiffs contend, plus the failure of

1. Plaintiffs amended their complaint on May 3, 1973 to add J. Samuel Sicherman, trading as J. Samuel Sicherman & Co. as an additional defendant. Defendant Sicherman has not joined in Bache's motion.

2. By memorandum and order dated April 14, 1972, plaintiffs were allowed to maintain this action as a class action in accordance with Rule 23, Fed.R.Civ.P.

3. 15 U.S.C. § 78t(a) "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

Bache to properly supervise the activities of Sicherman or to correct the public impression that Sicherman was in some manner connected with Bache, allowed Sicherman to obtain customers by trading on the use of Bache's established reputation, when they knew or should have known that he was engaged in illegal and fraudulent activities.

In its motion, defendant contends that the court lacks subject matter jurisdiction under the Securities Act of 1933 and the Securities Exchange Act of 1934 because the discretionary trading accounts in commodities futures which plaintiffs maintained with Sicherman were not "securities" as that term is defined in the Securities Acts.[4] *See* Milnarik v. M–S Commodities, Inc., 457 F. 2d 274 (7th Cir. 1972) ; cert. denied 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972) ; Wasnowic v. Chicago Board of Trade, 352 F.Supp. 1066 (M.D.Pa. 1972). Defendant further contends that as a matter of law, plaintiffs' complaint fails to state a claim upon which relief can be granted under the Commodity Exchange Act. 7 U.S.C. § 1 et seq.

## SECURITIES ACTS CLAIM

Bache's contention that the Court lacks jurisdiction under the federal securities laws is based primarily on this Court's prior decision in Wasnowic v. Chicago Board of Trade, 352 F.Supp. 1066 (M.D.Pa.1972). *Wasnowic* was a

related case arising out of the same fraudulent scheme alleged herein brought by two individuals who are members of the class represented by plaintiffs, seeking to recover damages from the Chicago Board of Trade and the Chicago Mercantile Exchange for aiding and abetting Sicherman in his alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. Relying on the recent Seventh Circuit decision in Milnarik v. M–S Commodities, Inc., 457 F.2d 274, cert denied 409 U.S. 887, 93 S.Ct. 113, 34 L. Ed.2d 144 (1972), this Court granted defendants' motion to dismiss the complaint for lack of subject matter jurisdiction under the federal securities laws on the ground that the discretionary trading accounts in commodities futures which plaintiffs maintained with Sicherman were not "securities" within the statutory definition. This finding was based upon this Court's determination that the agreements between Sicherman and plaintiffs in that case lacked the element of a common enterprise among investors, an element which the Court felt was essential to the definition of a security. *See* S.E.C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L. Ed. 1244 (1946) and Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).[5] The Court held that although Sicherman has opened numerous accounts with different custom-

---

4. The term "security" is defined in § 3 of the Securities Exchange Act, 15 U.S.C. § 78c(a) (10) as follows :

"The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's accept-

ance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."
The Securities Act of 1933 contains a definition almost identical to that contained in the 1934 Act and has received the same judicial interpretation. *See* Wasnowic v. Chicago Board of Trade, 352 F.Supp. 1066 *supra*; Anderson v. Francis I. duPont & Co., 291 F.Supp. 705 (D.Minn.1968).

5. In *Howey supra*, the Supreme Court defined "security" as a "contract, transaction or scheme whereby a person invests his money in a *common enterprise* and is led to expect profits solely from the efforts of the promotor or a third party . . ." (emphasis supplied) S.E.C. v. Howey, 328 U.S., at 299, 66 S.Ct. at 1103, *supra*.

ers acting as a common agent for each, nothing in the complaint alleged that Sicherman's various customers were joint participants in the same investment enterprise.

Bache urges that the *Wasnowic* holding compels the same result in this case. Plaintiffs, on the other hand, assert in opposition that the element of "commonality" is present here in that Sicherman had maintained numerous joint accounts with various investors, with some accounts having as many as five joint owners.[6] It is plaintiffs' contention that each multi-owned account maintained by Sicherman constituted a "security" within the statutory definition. In support of this contention, plaintiffs have submitted an affidavit which reveals that J. S. Sicherman & Co. had maintained 228 separate accounts during the time in question from December 31, 1968 to March 31, 1969. Of these 228 accounts, 105 were single accounts; 91 were held in the names of two individuals; 10 were held in the names of one or more individuals indicating a custodial relationship with one or more individuals; and 22 were held in various other ways. Apparently conceding that the single accounts did not constitute "securities", plaintiffs nevertheless seek to establish that the joint ownership accounts are "securities."

▮ Essentially, this same argument had been raised and rejected by the Seventh Circuit in *Milnarik* and by this Court in *Wasnowic*. In *Milnarik*, plaintiffs[7] had opened a discretionary account with the defendant Nelson on the understanding that he could use the money deposited with him at his discretion for plaintiffs' benefit. Plaintiffs contended that their agreement with defendant, and his similar agreements with other customers constituted a security. In rejecting this argument, the Court of Appeals affirmed the District Court's dismissal of the complaint,[8] holding:

"We find the element of commonality absent here. Although the complaint does allege that Nelson entered into similar discretionary arrangements with other customers, the success or failure of those other contracts had no direct impact on the profitability of plaintiffs' contract. Nelson's various customers were represented by a common agent, but they were not joint participants in the same investment enterprise."

Milnarik v. M–S Commodities, Inc., 457 F.2d at 276, 277, *supra.*

The Milnarik opinion pointed out that the "security" is the "investment contract" between the plaintiffs and the broker creating the discretionary trading account. Consequently, in the case before us, the "investment contract" is *between plaintiffs and Sicherman* and not the arrangement existing among the investors in a joint account. As in Milnarik, the agreement here between plaintiffs and Sicherman created " . . . an agency-for-hire rather than constituting the sale of a unit of a larger enterprise".

The *Milnarik* rationale was expressly adopted by this Court in its prior memorandum and order in Wasnowic v. Chicago Board of Trade, 352 F.Supp. 1066 *supra.* Plaintiffs in Wasnowic attempted to show the existence of a common en-

---

6. Plaintiffs do not contend that the commodity future contracts themselves are securities. Sinva v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 253 F.Supp. 359 (S.D.N.Y.1966). Rather, they contend that the discretionary trading accounts which plaintiffs held in commodity future contracts constituted investment contracts and, hence, are securities.

7. The account which plaintiffs in *Milnarik* maintained constituted a security was apparently a joint account with seven co-owners. *See* the district court opinion in *Milnarik* at 320 F.Supp. 1149 (N.D.Ill.1970).

8. The district court based its dismissal on a ground not reached by the Court of Appeals, *i. e.* that the agreement between the parties resulted in a private rather than a public offering and was therefore not required to be registered. Milnarik v. M–S Commodities, Inc., 320 F.Supp. 1149 (N.D.Ill.1970).

terprise in the fact that one of Sicherman's customers, plaintiff Keystone Traders, had more than 200 stockholders to share in any profits generated by Sicherman's efforts. Relying on *Milnarik*, plaintiffs' argument was rejected, the court noting the following language from the district court opinion in *Milnarik*:

> "Each contract creating this relationship is unitary in nature and each will be a success or failure without regard to the others. Some may show a profit, some a loss, but they are independent of each other. No matter how many discretionary trading accounts Nelson may have had with other principals, the 'security' 'issued' to the plaintiffs, their discretionary trading account, could not be offered to anyone else."

*Milnarik v. M–S Commodities, Inc.,* 320 F.Supp. at 1151, *supra.* This description of the agreement in Milnarik is equally applicable here and is dispositive of the issue before us. Accordingly, for the reasons stated above, defendant Bache's motion to dismiss plaintiff's claim under the Federal Securities laws will be granted.

## COMMODITIES ACT CLAIM

■ The result is different, however, with respect to plaintiffs' claim under the Commodities Exchange Act. 7 U.S. C. § 1 et seq. While the Commodities Act does not expressly provide for a private civil action for damages arising out of its violation, many courts have held that if a particular commodity is regulated by the Act,[9] an implied federal cause of action for violation of § 6b of the Act does exist.[10] Booth v. Peavey Company, Commodity Services, 430 F.2d 132 (8th Cir.1970); Johnson v. Arthur Espey, Shearson, Hammill & Co., 341 F. Supp. 764 (S.D.N.Y.1972); McCurnin v. Kohlmeyer & Co., 340 F.Supp. 1338 (E. D.La.1972); Anderson v. duPont & Co., 291 F.Supp. 705 (D.Minn.1968); Hecht v. Harris, Upham & Co., 283 F.Supp. 417 (N.D.Cal.1968); Goodman v. H. Hentz, 265 F.Supp. 440 (N.D.Ill.1967).[11] Plaintiffs allege that Sicherman solicited funds from them by making false representations that purchases and sales of commodities were being made with their money, when in fact they were never made, and that Sicherman had "systematically, fraudulently, and regularly embezzled and otherwise stole the monies of the plaintiffs and other members of the plaintiffs' class of customers of J. Samuel Sicherman & Co. . . ." Plaintiffs' complaint against defendant Bache is that it aided and abetted Sicherman in his fraudulent scheme in violation of the Commodities Exchange Act and the rules and regulations promulgated thereunder.[12] These allegations are

---

9. Regulated commodities are identified in § 2 of the Act and comprise generally agricultural products. Defendant claims that plaintiffs have submitted no proof that the commodities purchased by Sicherman were within the scope of § 2. However, since plaintiffs claim a violation of § 6b of the Act and § 6b only regulates dealings in "commodities" as defined in § 2, it may be assumed that plaintiffs are alleging that trades were made of items included in § 2. Johnson v. Arthur Espey, Shearson, Hammill & Co., 341 F.Supp. at 766, *supra.* If it should later appear that none of the trades involved a § 2 commodity, defendant may renew its motion.

10. Section 6b contains a broad prohibition against cheating, defrauding, deceiving or making false statements or reports.

11. The test for establishing an implied civil remedy for a statutory violation is set forth in Restatement (Second), Torts § 286.
    > "The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if: (a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and (b) the interest invaded is one which the enactment is intended to protect."

    *See also* Goodman v. H. Hentz, 265 F.Supp. 440, 447 (N.D.Ill.1967); Kardon v. National Gypsum Co., 69 F.Supp. 512, 513 (E.D.Pa. 1946).

12. In addition to aiding and abetting Sicherman in his violations of the Commodities Exchange Act, plaintiffs also maintain that

sufficient to state a cause of action under the Commodities Act and are sufficient to withstand defendant's motion to dismiss. *See* Anderson v. Francis I. duPont & Co., 291 F.Supp. at 710, *supra*.

In sum, therefore, for all of the reasons stated above, defendant Bache's motion to dismiss plaintiffs' claim under the Securities Act of 1933 and the Securities Exchange Act of 1934 will be granted for lack of subject matter jurisdiction and defendant Bache's motion to dismiss plaintiffs' claim under the Commodities Exchange Act will be denied.

Bache directly violated various rules of the Board of Trade of the City of Chicago, specifically Rules 101, 102, 221-A, 222 and 222A. In view of the court's ruling that plaintiffs are entitled to present proof on the validity of their "aiding and abetting" allegations, the court will withhold ruling on whether a violation of these various rules will give rise to a private cause of action. *Cf.* Buttrey v. Merrill Lynch, Pierce, Fenner

& Smith, Inc., 410 F.2d 135 (7th Cir. 1969) *with* Colonial Realty Corporation v. Bache & Co., 358 F.2d 178 (2d Cir.), cert. denied 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).