Ben S. **SCHWARTZ**, on behalf of Schwartz-Alloy Metal Products, Inc., a Joint Venture, Plaintiff,

v.

**BACHE & CO. INCORPORATED**, Defendant.

Civ. No. 10–162–C–1.

United States District Court, S. D. Iowa.

March 31, 1972.

---

Harlan D. Hockenberg, Donald A. Wine, John H. Heen, Ronald L. Hersbergen (Thoma, Schoenthal, Davis, Hockenberg & Wine), Des Moines, Iowa, Rex J. Ryden, Marshalltown, Iowa, for plaintiff.

Frank W. Davis, Sr., Frank W. Davis, Jr., Charles Dick, Jr., Des Moines, Iowa, George H. Colin, Leonard H. Rubin, New York City, for defendant.

## MEMORANDUM OPINION AND RULING ON MOTIONS FOR SUMMARY JUDGMENT

STUART, District Judge.

The above entitled matter is before the court on defendant's Motion to Dismiss divisions V, VI and VII of plaintiff's Amendment to Complaint filed May 24, 1971. The court in its Order filed January 28, 1972 elected to treat the motion as a motion for summary judgment and granted additional time to the parties for the filing of supplemental affidavits and briefs. Such affidavits and briefs having been filed, the matter has been taken under consideration without further oral argument.

Divisions V, VI and VII and the various counts contained therein are based on the contention that certain sales contracts involved here are "securities" within the Securities Act of 1933 and the Iowa Securities Law, Chapter 502, Code of Iowa. As the definitions are quite similar and as there are no Iowa cases on point, the following discussion applies to both the Securities Act of 1933 and the Iowa Securities Law.

The term "security" is defined in the Securities Act of 1933 to embrace a variety of instruments including any "investment contract". Sec. 2(1), 15 U.S.C. § 77b(1). "Investment contract" also appears in the Iowa definition of "security" found in section 502.3(1). The parties agree that if these contracts are securities within the meaning of these acts, it is because they are "investment contracts". The parties also agree that S. E. C. v. W. J. Howey Co. (1946), 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 defines an investment contract and lays down the tests for judging the transactions in question. The Supreme Court said:

"[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." 328 U.S. at 298–299, 66 S.Ct. at 1103.

"The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. If that test be satisfied, it is immaterial whether the enterprise is speculative or non-speculative or whether there is a

sale of property with or without intrinsic value." 328 U.S. at 301, 66 S.Ct. at 1104.

■■ Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case show that there is no genuine issue as to any material fact, other than damages, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Poller v. Columbia Broadcasting System, Inc. (1961), 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458; Chapman v. Rudd Paint & Varnish Company (9th Cir., 1969), 409 F.2d 635, 639. Therefore the pleadings, affidavits and deposition filed herein will be examined in the light most favorable to plaintiff to determine whether defendant is entitled to a judgment as a matter of law even if plaintiff could establish the facts most favorable to his cause of action.

On December 19, 1969 plaintiff entered into 12 sales contracts with defendant each of which provided for the sale to plaintiff of ten short tons of "Electrolytic Nickel Cathodes, 2″ x 2″, produced by Engelhard Industries" at $3.20 per pound, F.O.B. Newark, New Jersey. Payment was "net cash against invoice". They were executed on the same printed form and contained an identical condition tying the contract price to the current quotation of "International Nickel Company" and providing for a corresponding increase or decrease during the month of deliveries. The only difference in the contracts was the date of shipment. Each provided for shipment at the end of different month during the year 1970.

Plaintiff an experienced metal trader and speculator had dealt with defendant for over 10 years. Defendant operates both as a brokerage house and as a dealer in various metals including nickel. These particular contracts were entered into by plaintiff for investment and speculation rather than for delivery in kind. Bache & Co. was well aware that one of plaintiff's investment objectives was to speculate as to what the value of those contracts would be when the delivery date thereunder arrived.

In an affidavit executed February 25, 1972 plaintiff states:

"In order for me to engage in any speculation with respect to the nickel contracts, it was essential that a market maker capable of exerting pressures and influences on market prices of nickel and nickel contracts be in existence. To my knowledge, Bache & Co. is one of few brokerage houses maintaining a separate department devoted to the metals market and that Bache & Co. occupies a position of pre-eminence in this respect. I was aware from my many past dealings with Bache involving other metals and metal contracts that Bache was an influential factor in the metal contract market, and was in a position to effect purchases and sales of the nickel contracts in question. I, therefore, consulted on a regular daily basis with I. J. Louis, Jr. of Bache & Co. as to the market conditions relative to the resale of said nickel contracts and relied upon his judgment."

Plaintiff argues that Bache possessed superior knowledge with respect to the electrolytic nickel market and by knowingly selling electrolytic nickel not meeting ASTM specifications defendant effectively left plaintiff no alternative but to look to defendant and defendant's skills to have a market for the nickel as it effectively controlled transactions in Engelhard Nickel. "Thus, the efforts of defendant, not as a seller of goods, but as a third party market-maker, were indispensable to the realization by plaintiff of a profit from any venture in nonconforming electrolytic nickel."

Although the factual basis for such argument appears to be lacking, the court will assume defendant occupied this position. While it may or may not make some difference on other causes of action, I do not believe this argument determines whether the transactions involved here were security transactions within the meaning of the act.

It is also plaintiff's position that the evidence at trial will show the instruments denominated "Sales Contracts" were really for investment rather than ordinary contracts for the sale of nickel. This fact does not in and of itself affect the nature of the transaction, even if known to defendant. Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc. (S.D.N.Y.1966), 253 F.Supp. 359, 366.

■ I do not believe the circumstances surrounding these contracts, which on their face are sales contracts for delivery on specified dates in the future, bring the transaction within the definition of securities hereinbefore set out. Essential elements of "investment contracts" are lacking. The circumstances do not meet the tests of the *Howey* case.

The circumstances do not raise a fact issue as to the existence of a common enterprise in which plaintiff invested. There is no claim defendant or any one else would share in the expected profits from these contracts or that others had entered into similar contracts. Plaintiff does not discuss this element of an investment contract to any great extent.

More importantly, however, there is no showing plaintiff invested in these contracts expecting profits would result solely from the efforts of the defendant or a third party. There is no claim this was a discretionary account which gave defendant authority to invest plaintiff's money. There is no claim defendant agreed to find buyers for the contracts or the nickel. There is only a vague charge that defendant was a "market maker" but no claim defendant agreed to manipulate the market for plaintiff's benefit.

The only other evidence by which plaintiff seeks to prove he expected profits solely from defendant's efforts is found in his affidavit in which he states he sought defendant's advice daily on the nickel market and relied on it. This is not sufficient to meet the *Howey* tests for an investment contract.

The case which appears to be closest on the facts is Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., supra. The pertinent question raised was whether contracts to purchase sugar for future delivery are actually "investment contracts" within the meaning of the securities acts. The court said:

" * * * And it can now fairly be said that 'the line is drawn where neither the element of a common enterprise nor the element of reliance upon the efforts of others is present'. 1 Loss, Securities Regulation 491 (2d ed. 1961).

"Under these standards, insofar as they are meaningful in the case at bar, plaintiff's contention is clearly without merit. Futures contracts generally are simply agreements for the delivery of a specified quantity of a commodity, here sugar, on any day in a given future month. But the element of future delivery does not transform a commodities contract into a securities contract. The purchaser, Sinva in this case, gained no share in a common enterprise, either between plaintiff and defendant or plaintiff and anyone else. Rather it acquired the power to exercise absolute dominion and control over the specified commodities. Sinva, if it so desired, could have accepted delivery of the sugar on the due dates." 253 F.Supp. at 366.

"Moreover, the purchase of commodities futures involves no reliance upon the efforts of promoters, managers, employees or any third party. The mere presence of a speculative motive on the part of the purchaser or seller does not evidence the existence of an 'investment contract' within the meaning of the securities acts. In a sense anyone who buys or sells a horse or an automobile hopes to realize a profitable 'investment'. But the expected return is not contingent upon the continuing efforts of another. In the words of the Supreme Court Sinva '[has] been left to [its] own devices for realizing upon [its] rights'. [S. E. C. v. C. M. Joiner Leasing Corp.] 320 U.S. [344] at 348, 64 S.Ct. [120] at 122 [88 L.Ed. 88].

" * * * *

"Thus the plaintiff cannot bring its claim within the purview of §§ 10(b) and 17(a) on the theory that the sugar futures contracts are actually 'investment contracts' as that term is defined in the securities acts." 253 F.Supp. at 367.

Plaintiff seeks some consolation in that a summary judgment was not granted there because it did not appear to a certainty that Sinva was not entitled to any relief under any state of facts which could be proved in support of the claim. This was based on allegations of conversion of money by a broker regulated under § 10 of the 1934 Act, not the nature of the transaction. It does not aid plaintiff here.

No cases have been cited which have brought similar transactions under the securities act. In cases which have held transactions involved were "investment contracts", there was both a common enterprise and reliance on the efforts of defendant or third party for a profit. Tcherepnin v. Knight (1967), 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564; Bache & Co., Inc. v. Commercial Iron & Metal Co. (S.D.N.Y., 1971) CCH, Federal Securities Law Reports ¶ 93,111 (discretionary account); Johns Hopkins University v. Hutton (4th Cir., 1970), 422 F.2d 1124; Continental Marketing Corp. v. S. E. C. (10th Cir., 1967), 387 F.2d 466; United States v. Herr (7th Cir., 1964), 338 F.2d 607; Penfield Co. of Cal. v. S. E. C. (9th Cir., 1944), 143 F.2d 746; S. E. C. v. Crude Oil Corporation (7th Cir., 1937), 93 F.2d 844; Anderson v. Francis I. du Pont & Co. (D. Minn.1968), 291 F.Supp. 705; Berman v. Orimex Trading, Inc. (S.D.N.Y., 1968), 291 F.Supp. 701; Maheu v. Reynolds & Co. (S.D.N.Y., 1967), 282 F. Supp. 423; S. E. C. v. Bailey (S.D.Fla., 1941), 41 F.Supp. 647; S. E. C. v. Payne (S.D.N.Y., 1940), 35 F.Supp. 873; S. E. C. v. Wickham (D.Minn., 1935), 12 F.Supp. 245. See also: Chapman v. Rudd Paint & Varnish Company (9th Cir., 1969), 409 F.2d 635; Anno: Securities—"Investment Contract" (1970) 3 A.L.R.Fed. 592.

I therefore hold that the circumstances shown by the file in this case do not make the sales contracts herein involved "investment contracts" and they are not securities within the meaning of the Securities Act of 1933 or Chapter 502 Code of Iowa.

As divisions V, VI and VII of plaintiffs' amended complaint are based on that premise, defendants' motion for summary judgment as to those divisions should be granted.