Stanley **ROCHKIND**

v.

**REYNOLDS SECURITIES, INC.**

**Civ. No. HM74-219.**

United States District Court,
D. Maryland.

Jan. 8, 1975.

Donovan M. Hamm, Jr., Baltimore, Md., for plaintiff.

Edward M. Statland and Barry A. Zaslav, Chevy Chase, Md., for defendant.

HERBERT F. MURRAY, District Judge.

Defendant Reynolds Securities, Inc. has moved under Rule 12(b)(6) to dismiss all four counts of the plaintiff's

complaint. Count I is brought under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. Sec. 78j. Counts II and III are brought under Sections 12(2) and 17 of the Securities Act of 1933, 15 U.S.C. Sec. 77*l*(2) and 77q. Count IV charges the defendant with negligence under the diversity of citizenship jurisdiction, 28 U.S.C. Sec. 1332. As to the first three counts, defendant contends that neither the commodities contracts plaintiff purchased through defendant nor the commodities account between plaintiff and defendant are "securities" within the definition of that term in the two acts. Defendant further claims that the fourth count is defective for failure to allege the amount of plaintiff's damages. For reasons hereinafter stated, the motion to dismiss as to all of the counts of the complaint is denied.

Both the Securities Act and the Exchange Act have similar definitions of the term "security." The only part of the definition in each act apparently relevant here is:

> The term "security" means any * * * investment contract. 15 U.S.C. § 77b(1); 15 U.S.C. § 78c(a)(10)

Is a commodities contract or commodities account an investment contract and thus a security?[1]

In the landmark case of SEC v. W. J. Howey Co., 328 U.S. 293, 298–299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244, the Supreme Court speaking through Justice Murphy stated:

> [A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.

Again, at 301 of 328 U.S. and 1104 of 66 S.Ct., the Court repeated:

The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.

Defendant's basic contention is that commodities accounts are not securities since such accounts lack the element of "common enterprise" required by *Howey*. It is claimed this conclusion is reached because such accounts involve no pooling of funds by investors.

Defendant, in a memorandum in support of the motion to dismiss, recognizes that two distinct lines of authority have evolved reaching opposite conclusions as to whether commodities accounts are within the purview of investment contracts under the 1933 and 1934 Acts.

Supporting defendant's argument is the first line of cases which includes Milnarik v. M–S Commodities, Inc., 457 F.2d 274, 276 (7th Cir. 1972); cert. denied (1972), 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144; Wasnowic v. Chicago Board of Trade, 352 F.Supp. 1066, 1069 (M.D.Pa.1972); Stuckey v. duPont Glore Forgan, Inc., 59 F.R.D. 129, 131 (N.D.Cal.1973); and Hirk v. Agri-Research Council, Inc., et al., CCH Fed.Sec. L.Rep. ¶ 94.738 (August 7, 1974).

The second line of cases, however, contains much of comfort to the plaintiff, and includes Berman v. Orimex Trading, Inc., 291 F.Supp. 701, 702 (S.D.N.Y. 1968); Anderson v. Francis I. duPont & Co., 291 F.Supp. 705 (D.Minn.1968); Maheu v. Reynolds & Co., 282 F.Supp. 423, 426 (S.D.N.Y.1967); Johnson v. Arthur Espey, Shearson, Hamill & Co., 341 F.Supp. 764 (S.D.N.Y.1972); Marshall v. Lamson Bros. & Co., 368 F.Supp. 486 (S.D.Iowa 1974); S.E.C. v. Koscot Interplanetary, Inc., 497 F.2d 473 (5th Cir., 1974) (this case involves the element of "common enterprise" not in commodities accounts but in a pyramid sales scheme); and S.E.C. v. Continen-

---

[1]. It appears clear that the actual commodity future contracts are not securities. Berman v. Dean Witter & Co., Inc., 353 F.Supp. 669, 671 (C.D.Cal.1973); Schwartz v. Bache & Co., Inc., 340 F.Supp. 995, 993–999 (S.D. Iowa 1972); Berman v. Orimex Trading, Inc., 291 F.Supp. 701, 702 (S.D.N.Y.1968); Sinva v. Merrill Lynch, Pierce, Fenner & Smith, 253 F.Supp. 359, 360–367 (S.D.N.Y. 1966).

tal Commodities Corp., 497 F.2d 516 (5th Cir., 1974).

In considering whether this court should follow the broader reading of the *Howey* definition of investment contract adopted by Judge Stuart in *Lamson* and Circuit Judge Gewin in *Koscot* and *Continental Commodities*, the court takes as a starting point the observation of Judge Oren R. Lewis of the United States District Court for the Eastern District of Virginia when considering whether the offer and sale of Scotch whiskey constituted the offer and sale of a security in the form of an investment contract under the securities laws. In S.E.C. v. Haffenden-Rimar Int'l, Inc., 362 F.Supp. 323, 326 (E.D.Va.1973), aff'd May 29, 1974, United States Court of Appeals for the Fourth Circuit, 496 F.2d 1192, Judge Lewis stated:

> The Securities Act clearly reaches any novel, uncommon or irregular device, whatever it appears to be, if it be proved as a matter of fact that it was widely offered or dealt in under terms or courses of dealing which established its character in commerce as an investment contract or as any interest or instrument commonly known as a security. The Supreme Court of the United States so stated in S.E.C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943).

Additionally, as the Fourth Circuit noted in its per curiam affirmance of Judge Lewis at 1193:

> The Supreme Court has repeatedly reminded that securities legislation is to be construed "not technically and restrictively, but flexibly to effectuate its remedial purposes." S.E.C. v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195, 84 S.Ct. 275, 285, 11 L. Ed.2d 237 (1963), *cited in* Affiliated Ute Citizens v. United States, 406 U. S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). *See also* Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

Having in mind that remedial legislation should be construed broadly, and that the Supreme Court in *Howey* characterized its definition of investment contract as embodying "a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits" (328 U.S. at 299, 66 S.Ct. at 1103), reference may now be had to the nature of the scheme alleged in the present complaint. The allegations with regard to such scheme are summarized by plaintiff's counsel as follows:

> In the instant case, Plaintiff answered an advertisement placed in a newspaper of general circulation by Defendant which urged members of the public to contact Defendant for advice with respect to potential investments and which held Defendant out to be an expert in such matters. Immediately thereafter, Plaintiff was visited by an agent and representative of Defendant who professed to be an expert in the trading of commodity futures and who induced Plaintiff to enter into an agreement with Defendant whereby Defendant would serve as Plaintiff's agent in the purchase and sale of commodity futures. As the Complaint filed herein alleges, in reliance upon the Defendant's professed expertise, Plaintiff allowed Defendant to make various investment decisions for him. Defendant's response was to 'churn' Plaintiff's account by inducing him to make a continuous series of purchases and sales of commodity futures which served only to increase the commissions collected by the Defendant.

If the proof shows such a scheme, would it satisfy the "common enterprise" requirement of *Howey*? Did the *Howey* definition mean that there must always be a pooling of funds by several investors? Can there be a common enterprise where a single investor puts money into a commodities account relying on the expertise of the broker to make a profit from purchases and sales?

If one adopts a strict literal reading of the "common enterprise" part of the *Howey* definition, then one can understand the emphasis in the *Milnarik* line of cases on the absence of commonality in the single investor commodity account. However, such a strict and literal approach is precisely what the cases cited earlier in this memorandum admonish us not to adopt. This court inclines to the view of Circuit Judge Gewin speaking for the Fifth Circuit in S. E.C. v. Continental Commodities Corp., 497 F.2d 516. In rejecting the *Milnarik* view, Judge Gewin stated:

In SEC v. Koscot Interplanetary, Inc. *supra*, this court decried a litmus application of the *Howey* test and expressed its preference for a resilient standard which would comport with the uniformly acclaimed remedial purposes of the Securities Act of 1933 and the Securities Exchange Act of 1934. . . . There we endorsed the Ninth Circuit's formulation that " '[a] common enterprise is one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties'," SEC v. Koscot Interplanetary, Inc., *supra* [497 F.2d] at 478, quoting SEC v. Glen W. Turner Enterprises, 474 F.2d 476, 482 n. 7 (9th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973), and remonstrated that "[t]he critical factor is not the similitude or coincidence of investor input, but rather the uniformity of impact of the promoter's efforts." SEC v. Koscot Interplanetary, Inc., *supra*, [497 F.2d] at 478. 497 F.2d at 521, 522.

Likewise, this court agrees with the conclusion of District Judge Stuart in Marshall v. Lamson Bros. & Co., 368 F. Supp. 486, 489 (S.D.Iowa, 1974) when he stated:

At the very least, it is equally as plausible to conclude that the element of "common enterprise" is satisfied when a single investor commits his funds to a promoter in hope of making a profit as to conclude that the investor protection afforded by the '33 and '34 Acts and the complex regulatory scheme developed thereunder is available only to those hapless capitalists who are not alone in their misfortune.

Finally, in Maheu v. Reynolds & Co., 282 F.Supp. 423 at 429 (S.D.N.Y.1968) Judge Bonsal flatly held that the joint commodities account opened with defendant Reynolds by plaintiffs Maheu and Gay:

. . . may constitute a security even if there was no pooling arrangement or common enterprise among investors. 1 Loss, Securities Regulation 489 (2d ed. 1961); *see* S.E.C. v. Payne, 35 F.Supp. 873 (S.D.N.Y. 1940); S.E.C. v. Wickham, 12 F.Supp. 245 (D.Minn.1935).

The court does not consider it fatal, as urged by counsel for defense at oral argument of the motion, that there was no specific allegation in the complaint that the commodities account in question was a "discretionary" account. That the account was of that nature would seem to be implicit from the other allegations of the complaint as to how the account was handled. In any event, as the United States Court of Appeals for the Fourth Circuit has held, to justify dismissal, "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." McDonald v. Patton, 240 F.2d 424, 426 (4th Cir. 1957). Under that test, dismissal in the present case would not be justified.

For the reasons stated, the court is satisfied that a commodities account of the nature alleged in the present complaint is a "security" within the *Howey* definition.

With regard to defendant's point that plaintiff in the count based on diversity jurisdiction failed to claim damages in excess of the jurisdictional amount paragraph 35 of Count IV does allege "The amount in controversy, exclusive of interest and costs, exceeds $10,000.00."

Additionally, in paragraph 39, plaintiff further alleges:

> As a direct result of the violations alleged in Counts I through IV, plaintiff has suffered damage. Although almost all of the securities purchased by plaintiff were finally sold at a loss, the statements of account furnished by defendant are both confusing and inaccurate. Plaintiff is unable to state at this time the precise amount of said damages, since the determination thereof will require discovery and an analysis of defendant's books and records.

Clearly, the court has jurisdiction under Counts I–III based on the Securities and Exchange Acts. It would not commend itself to the court to dismiss at this time Count IV for lack of specificity in the damages claimed when the underlying records which would clarify that element are in the control of the defendant. After discovery, defendant has the option to reassert the point by motion for partial summary judgment.

An order denying defendant's motion to dismiss will be entered.