Abraham SILVERSTEIN, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., J.B. Leonard, Mark Fisher and Donald J. Tabone, Defendants.

No. 84 Civ. 7614 (WK).

United States District Court,
S.D. New York.

Oct. 2, 1985.

Law Offices of Bertram Zweibon by Lorraine K. Bracker, New York City, for plaintiff.

Howard G. Meyers, Jr., New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Defendant moves to dismiss a complaint alleging violations of the anti-fraud provisions of the federal securities laws,[1] the rules of the National Association of Securities Dealers ("NASD") and the New York Stock Exchange ("NYSE"), and various state law obligations of due care and fiduciary duty. For the reasons which follow we dismiss the causes of action asserting violation of the rules of the above-mentioned associations, and, treating defendants' motion with respect to the securities claims as one for summary judgment, we grant that motion.

## BACKGROUND

Early in 1983 plaintiff invested $50,000 in a commodity futures account at the defendant brokerage firm ("Merrill Lynch"). This account was managed by defendants Leonard and Fisher (the "brokers" or "investment managers") who were in turn supervised by defendant Tabone. Plaintiff alleges that over the period of just a few months his account was so mishandled that he lost $16,541, for which he demands compensatory and punitive damages.

While defendants style their motion as one made pursuant to F.R.Civ.P. 12(b)(6), they have attached to their papers plaintiff's account authorization and the affidavit of defendant Jay B. Leonard, plaintiff's broker. At oral argument we inquired whether plaintiff disputed any of the allegations contained in that affidavit, indicating that if there was no dispute we would be inclined to dismiss the securities laws claims. Although counsel for plaintiff first indicated that she had no dispute with the contents of the affidavit, in the course of argument it became apparent that this was not so. We accordingly advised plaintiff to conduct whatever discovery was necessary to refute any of the allegations in the defendants' submissions. Plaintiff has done so, and we thus treat the motion as to the securities claims as one for summary judgment.

The uncontradicted portion of defendant Leonard's affidavit reveals that plaintiff's account was a commodity futures account.

1. Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b); § 15(c)(1) of the 1934 Act, 15 U.S.C. § 78o, § 17(a) of the 1933 Act, 15 U.S.C. § 77q, and Rule 10b–5, 17 C.F.R. 240.10b–5 (1985).

Affidavit at ¶ 2. Pursuant to trading authorizations signed by plaintiff, the account was traded on a discretionary basis, or one which did not require plaintiff's approval prior to each individual trade. Affidavit at ¶ 3. The account was an individual account and not a commodity pool account. Affidavit at ¶ 4. Defendant Leonard's affidavit further states, at ¶ 7, that

> [t]he only compensation which was derived from plaintiff's account was commissions on a trade by trade basis. No income was derived based upon the profit or loss in the account and no bonus or other incentive compensation was derived from the account based upon the success or failure of the trading activity.

Pursuant to our directive at oral argument plaintiff took the deposition of defendant Tabone who, at the time of the events complained of, oversaw the work of the defendant brokers. Tabone testified that at the relevant time, Merrill Lynch sponsored "recognition clubs" for which individual brokers became eligible when they achieved a certain annual level of commissions on all of their accounts. Club members became entitled to reimbursement for monetary and merchandise expenditures. Each of the defendant brokers before us gained entry into the club based upon the total amount of commissions earned from all of their accounts. Deposition of Tabone at 21–22. Tabone also confirmed defendant Leonard's explanation of the basis on which commissions were earned from plaintiff's account, that is, based upon the amount of trading done, rather than on the profitability of the transactions. *Id.* at 11–12, 21.

Tabone further testified that brokers could, if they wished, personally invest money in commodity futures in which their customers invested, and could invest several customers' funds in the same items. They were not required to advise their customers of such actions. *Id.* at 16–17.

## DISCUSSION

### Rules of the NASD and NYSE

■ We have previously held that there is no private right of action under the rules of the NASD or NYSE, *Juster v. Rothschild, Unterberg, Towbin, et al.* (S.D.N.Y. 1983) 554 F.Supp. 331, 333, and plaintiff has not set forth any arguments which would change our view on the matter. We therefore dismiss those causes of action brought under such rules.

## Securities Law Claims

■ Defendants contend that plaintiff's claims under the federal securities laws must fall because his discretionary commodity futures account was not a security. There is no question that a commodity future is not included within the statutory definition of a security. 15 U.S.C. § 77b(1); 15 U.S.C. § 78c(a)(10); *see Curran v. Merrill Lynch Pierce Fenner & Smith* (6th Cir.1980) 622 F.2d 216, 221, *aff'd on other grounds* (1982) 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182; *Berman v. Orimex Trading Co.* (S.D.N.Y.1968) 291 F.Supp. 701, 702. However, the definition of a security does encompass an "investment contract," 15 U.S.C. § 77b(1); 15 U.S.C. § 78c(a)(10), which has been defined by the Supreme Court as having three elements: (1) an investment of money (2) in a common enterprise with (3) the expectation of profits to come solely from the efforts of others. *SEC v. Howey* (1946) 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244. Plaintiff maintains that his account constitutes such an investment contract and that his claim is therefore properly brought. There is little question, and defendants concede, that the first and third prongs of the *Howey* test are here met. We therefore focus our inquiry on the second, or "common enterprise" requirement, a definition of which has not yet been provided by our Court of Appeals.

■ It is generally agreed by all courts which have considered the question that the common enterprise requirement is met where there has been a showing of "horizontal commonality." Horizontal commonality focusses on the relationship between

an individual investor and a pool of other investors. *Curran, supra,* 622 F.2d at 221. It requires that these investors be "joint participants in the same investment enterprise," *Milnarik v. M.S. Commodities, Inc.* (7th Cir.) 457 F.2d 274, 277, *cert. denied* (1972) 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144, and that the success or failure of the other investments have a direct impact on the profitability of the plaintiff investor's account. *Id.* at 276. In such an arrangement, profits may be shared in proportion to one's contribution to the pool. *See Hirk v. Agri-Research Council, Inc.* (7th Cir.1977) 561 F.2d 96, 100; *Salcer v. MPLF & Smith, Inc.* (3d Cir.1982) 682 F.2d 459, 460, *Darrell v. Goodson* (S.D.N.Y. 1980) [1979–80] Fed.Sec.L.Rep. (CCH) ¶ 97,-349 at 97,325. It is clear that the instant case does not meet that requirement.[2]

A second approach toward finding a common enterprise focusses on the relationship between the investor and the broker. This perspective has been dubbed "vertical commonality" and has been interpreted both broadly and narrowly.

A variety of cases, including some from our own district, have applied a "broad" vertical commonality test to facts not too dissimilar from those before us and have concluded that a common enterprise could be found. *See, e.g., S.E.C. v. Continental Commodities Corp.* (5th Cir.1974) 497 F.2d 516; *Troyer v. Karcagi* (S.D.N.Y.1979) 476 F.Supp. 1142 (discretionary trading account is investment contract); *Johnson v. Arthur Espey, Shearson, Hammill & Co.* (S.D.N.Y.1972) 341 F.Supp. 764; *Berman v. Orimex Trading, Inc.* (S.D.N.Y.1968) 291 F.Supp. 701 (test satisfied by promoter's statement that it would make all investment decisions and could earn profit for investor); *Maheu v. Reynolds & Co.* (S.D.N.Y.1967) 282 F.Supp. 423 (discretionary account is investment contract). Other courts, applying a "narrow" standard, have rejected a finding of common enterprise on facts similar to those before us. *See, e.g., Mordaunt v. Incomco* (9th Cir.1982) 686 F.2d 815, *cert. denied* (1985) —— U.S. ——, 105 S.Ct. 801, 83 L.Ed.2d 793; *Kelsaw v. Union Pacific Railroad Co.* (9th Cir.1982) 686 F.2d 819; *Brodt v. Bache* (9th Cir.1979) 595 F.2d 459; *see also Savino v. E.F. Hutton* (S.D.N.Y.1981) 507 F.Supp. 1225 (rejecting "broad" approach); *Mechigian v. Art Capitol Corp.* (S.D.N.Y.1985) 612 F.Supp. 1421 (rejecting "broad" approach).

Without attempting a detailed analysis of the opinions in those cases, it seems to us that no interpretation of the facts in the instant action would meet the *Howey* criterion that plaintiff be engaged in a "common enterprise." An essential element of any common enterprise is that the fortunes of its members be to some degree related to each other. Here, however, it would be perfectly possible, on the one hand, for the defendants to have suggested a *few* lucky (or wise) investments which would have brought great profit to the plaintiff and practically no revenue to the defendants, and on the other hand—as plaintiff claims here to be the case—de-

---

**2.** Plaintiff argues that we should infer from defendant Tabone's testimony that the defendant brokers traded in the same commodity future on behalf of several customers at the same time, and that this circumstance suffices to show horizontal commonality. We disagree. Such coincidental investments would not transform plaintiff's account into an investment contract, for "the success or failure of those other contracts would have had no direct impact on the profitability of plaintiff's contract." *Milnarik, supra,* 457 F.2d at 276. Instead, all investors' expectation of profits would derive "from their individual trading accounts independently of all others," *Hirk, supra,* 561 F.2d at 100.

Plaintiff requests further discovery on the issue of whether there was horizontal commonality but has not suggested what facts might thus be uncovered which could support such a finding. Plaintiff appears not to dispute the allegation in defendant Leonard's affidavit that his account was not pooled, and other than demonstrating that there were simultaneous transactions in a given future on behalf of several customers, a scenario we have indicated would not support a finding of horizontal commonality, he has failed to demonstrate the need for such discovery. His conclusory "speculation about what discovery might uncover" is insufficient to defeat defendants' motion for summary judgment. *Contemporary Mission, Inc. v. U.S. Postal Service* (2d Cir.1981) 648 F.2d 97, 107. We accordingly deny his request.

fendants to have so poorly managed the account that plaintiff suffered great losses while defendant earned huge commissions. *See, e.g., Brodt v. Bache, supra* (where defendant brokerage firm earned commissions based not on profitability of transactions, but simply by their frequency, no common enterprise existed).[3]

■ We conclude that the *Howey* test has not been met and that no "investment contract" is before us. We accordingly grant summary judgment to defendants on his federal securities law claims. Having already dismissed plaintiff's actions under the rules of the NASD and the NYSE and there being no viable federal claim, we decline jurisdiction of the remaining pendant state law claims. The complaint is accordingly dismissed.

SO ORDERED.

**3.** Plaintiff's argument that broker membership in the Merrill Lynch recognition clubs provides sufficient correlation between the success of the investor and broker is unhelpful. Since membership in the clubs was founded on the amount of commissions earned, and commissions were earned not based upon the profitability of the underlying trades but simply on their number, defendants could be assured membership even though they had depleted plaintiff's account through poor investment decisions.