**Mr. & Mrs. John R. SHOTTO and Mr. Timothy Connor Spigelmire**

**v.**

**R. Michael LAUB, Jr. and Drexel Burnham Lambert Incorporated.**

**Civ. A. No. M–85–4181.**

United States District Court, D. Maryland.

June 3, 1986.

Phillips P. O'Shaughnessy and Sandbower, Gabler & O'Shaughnessy, P.A., Baltimore, Md., for plaintiffs.

David F. Albright, Harry M. Rifkin, and Semmes, Bowen & Semmes, Baltimore, Md., for defendants.

## MEMORANDUM OPINION

JAMES R. MILLER, Jr., District Judge.

Plaintiffs filed this action alleging numerous claims arising out of defendants' handling of plaintiffs' securities accounts

(Paper No. 1). On April 7, 1986, this court severed and ordered arbitration of most of plaintiffs' claims. *Shotto v. Laub*, 632 F.Supp. 516 (D.Md.1986). Remaining in this action are plaintiffs' claims, in Counts I and VII of the Complaint, under §§ 5 and 12(1) of the Securities Act of 1933 (the 1933 Act), 15 U.S.C. §§ 77e and 77*l*(1); and plaintiffs' claims, in Counts II and VIII of the Complaint, under § 12(2) of the 1933 Act, 15 U.S.C. § 77*l*(2).

Defendants have filed a Motion to Dismiss (Paper Nos. 17 and 18) and a Second Motion to Dismiss (Paper No. 22) in which they contend that the remaining claims should be dismissed. Plaintiffs have filed memoranda in opposition to the motions to dismiss and have moved for leave of court to amend their Complaint (Paper Nos. 19 and 28). In addition, defendants have filed a memorandum replying to plaintiffs' opposition and opposing plaintiffs' motion for leave to amend (Paper No. 29), and plaintiffs have sent a letter to the court responding to the arguments in defendants' reply (Paper No. 30). After reviewing the memoranda, the court finds that no hearing is necessary. Local Rule 6(G).

## I. *Factual Background*

The facts of the case were set out in detail in this court's previous Memorandum and Order. *Shotto v. Laub*, 632 F.Supp. at 518–19. With respect to the claims remaining in this case, the allegations are as follows: In Counts I and VII, plaintiffs allege that their discretionary accounts were "investment contracts" within the meaning of the 1933 Acts, and were, therefore, securities. Plaintiffs further allege that these "securities" were sold to them in violation of the 1933 Act because they constitute either an unregistered security or a registered security without a prospectus. In

Counts II and VIII, plaintiffs allege that defendants failed to disclose material facts and misrepresented material facts in connection with the sale of the discretionary accounts/investment contracts.

## II. *Legal Analysis*

Defendants assert three bases on which they contend that this action should be dismissed. First, defendants contend that plaintiffs' claims are barred by the one year statute of limitations set forth in § 13 of the 1933 Act, 15 U.S.C. § 77m.[1] Second, defendants contend that plaintiffs have failed to plead properly the elements of a claim under § 12 of the 1933 Act. Third, defendants contend that discretionary accounts are not securities under the 1933 Act.

With respect to defendants' statute of limitations argument, plaintiffs contend that a plaintiff is not required to anticipate a limitations defense. While this may be true generally, § 13 is not a typical statute of limitations because "[a] claim under section 12(2) must affirmatively plead compliance with the statute of limitations contained in section 13, and must include a statement of the plaintiff's 'due diligence' in seeking discovery of these untruths or omissions." *Intre Sport Ltd. v. Kidder, Peabody & Co.*, 625 F.Supp. 1303, 1310 (S.D.N.Y.1985). *See also Piper Acceptance Corp. v. Slaughter*, 600 F.Supp. 169, 172 (D.Colo.1985); *Southwest Investments I v. Midland Energy Co.*, 596 F.Supp. 219, 222 (E.D.Mo.1984); *In re Longhorn Securities Litigation*, 573 F.Supp. 255, 266 (W.D.Okla.1983). Since the alleged "sales" of the discretionary account occurred more than one year prior to the filing of this action, it appears that dismissal of the § 12(2) claims on this basis would be proper.

---

1. 15 U.S.C. § 77m states:

"No action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l*(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(2) of this title more than three years after the sale."

In the alternative, however, plaintiffs seek leave to amend, "as they did not reasonably suspect the misrepresentations at issue until a date within one year of the time suit was filed" (Paper No. 28 at 4). Although it is possible that plaintiffs could affirmatively plead facts sufficient to demonstrate compliance with § 13, the conclusory allegation made by plaintiffs is woefully inadequate to fulfill this purpose. *See, e.g., Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1312 (N.D.Ill.1984). Therefore, on the pleadings before the court, the motion to dismiss must be granted as to the claims under § 12(2). The motion for leave to amend will be denied as futile, since, as it is held *infra,* the § 12(2) claims must be dismissed in any event for an entirely independent reason.

 With respect to the claims under § 12(1), § 13 requires that a claim under § 12(1) be filed "within one year after the violation upon which it is based." Thus, for claims under § 12(1), plaintiff need not have discovered the violation for the limitations period to run, because "under the explicit language of § 13, the limitations period runs from the date of the violation irrespective of whether the plaintiff knew of the violation." *Cook v. Avien, Inc.,* 573 F.2d 685, 691 (1st Cir.1978) (and cases cited therein). There is no dispute that the alleged violation of § 5, *i.e.,* the purchase of the discretionary accounts, either unregistered or registered but without a prospectus, occurred more than one year prior to the filing of this action. Therefore, plaintiffs' claims under § 12(1) must also be dismissed.[2]

 With respect to defendants' claim that the Complaint is deficient in that it fails to allege the use of any means or instruments of transportation or communication in interstate commerce or of the mails in the sale or delivery of a security or transmission of a prospectus, this argument also appears valid. Nevertheless, because the allegations proposed in plaintiffs' Motion to Amend appear to meet this requirement, dismissal on this ground would not be proper.

In any event, the court has concluded for the reasons hereinafter set forth, that all of plaintiffs' claims, under both §§ 12(1) and 12(2), must be dismissed, because, under the allegations of the Complaint, the discretionary accounts are not "investment contracts," and hence are not "securities," within the meaning of the 1933 Act.

A determination of whether plaintiffs' discretionary trading accounts constitute "investment contracts" under 15 U.S.C. § 77b must begin with the Supreme Court's definition of an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946). Of these three elements, the first and third—making an investment of money and expecting profits from the efforts of others—are generally satisfied where a discretionary trading account exists, and are no doubt met here. The element which has troubled courts over the years in such applications is the second, the requirement of a common enterprise. *See generally* Annot., 58 A.L. R.Fed. 616 (1982).

In determining whether the common enterprise requirement has been satisfied, some courts have required that there be a pooling of investments, referred to as horizontal commonality. *See, e.g., Salcer v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 682 F.2d 459, 460 (3d Cir.1982); *Curran v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 622 F.2d 216, 222 (6th Cir. 1980); *Hirk v. Agri-Research Council, Inc.,* 561 F.2d 96, 100–01 (7th Cir.1977);

---

**2.** Plaintiffs have recently advanced, in support of their § 12(1) claims, the theory of equitable tolling. As plaintiffs note, however, the application of this theory in connection with such claims was recently rejected by Judge Ramsey of this court in *Morley v. Cohen,* 610 F.Supp. 798, 818 (D.Md.1985). This court agrees with the decision in *Morley* and, therefore, this argument is without merit.

*Milnarik v. M.S. Commodities, Inc.,* 457 F.2d 274, 277 (7th Cir.), *cert. denied,* 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972). There can be no question that horizontal commonality does not exist in the present case.

Other courts have applied the more liberal vertical commonality test, finding that the common enterprise requirement is met where the "fortunes of the investor are interwoven with and dependent upon the efforts and success of those making the investment." *Holtzman v. Proctor, Cook & Co.,* 528 F.Supp. 9 (D.Mass.1981), *quoting SEC v. Glenn Turner Enterprises, Inc.,* 474 F.2d 476, 482 n. 7 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). *See also Mordaunt v. Incomco,* 686 F.2d 815, 817 (9th Cir.1982); *Brodt v. Bache & Co.,* 595 F.2d 459, 461 (9th Cir.1978); *SEC v. Continental Commodities Corp.,* 497 F.2d 473, 478 (5th Cir. 1974). This theory, however, has experienced both broad and narrow interpretations.

In *Rochkind v. Reynolds Securities, Inc.,* 388 F.Supp. 254 (D.Md.1975), Judge Murray, apparently in an application of the vertical commonality theory, held that a commodities account was a security within the *Howey* definition, relying primarily on *Continental Commodities* and *SEC v. Koscut Interplanetary, Inc.,* 497 F.2d 473 (5th Cir.1974). It is the opinion of the undersigned judge, however, that even under the vertical commonality test, the definition of a "common enterprise" under *Howey* should not extend to a situation where a single investor places money into a commodities or securities account, simply because he relys on the expertise of the broker in order to make a profit, and the broker receives commissions based solely on the number and size of the transactions in the account, rather than on its profitability or lack thereof to the investor. Such a conclusion would, in effect, eliminate the "common enterprise" requirement from the definition of a security. To the extent *Rochkind* is at odds with this conclusion, I respectfully disagree with *Rochkind.*

This court interprets the vertical commonality test as requiring, at a minimum, that there be some showing that the investor's fortunes are interwoven with those of his broker, beyond the mere payment of commissions and interest. In so holding, this court finds especially persuasive the opinions in the recent cases of *Silverstein v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 618 F.Supp. 436 (S.D. N.Y.1985) and *Xaphes v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 597 F.Supp. 213 (D.Me.1984). *See also Kaufman v. Magid,* 539 F.Supp. 1088, 1096–97 (D.Mass.1982). Thus, where a plaintiff alleges some interdependency between the profits and losses of the investor and those of the broker, *i.e.,* payment made to the broker on a percentage of the profits basis, then vertical commonality is present. *See, e.g., Savino v. E.F. Hutton & Co.,* 507 F.Supp. 1225, 1237–39 (S.D.N.Y.1981). Where, however, "the success or failure of [the broker] does not correlate with individual investor profit or loss," *Brodt v. Bache & Co.,* 595 F.2d at 461, no vertical commonality exists.

In the present case, plaintiffs allege no interdependency between defendants' earnings and plaintiffs' profit or loss. It appears, therefore, that the comments of the *Silverstein* court apply with equal force to the present case:

"An essential element of any common enterprise is that the fortunes of its members be to some degree related to each other. Here, however, it would be perfectly possible, on the one hand, for the defendants to have suggested a *few* lucky (or wise) investments which would have brought great profit to the plaintiff and practically no revenue to the defendants, and on the other hand—as plaintiff claims here to be the case—defendants to have so poorly managed the account that plaintiff suffered great losses while defendant earned huge commissions."

618 F.Supp. at 439–40.

In sum, this court finds that the discretionary accounts in the present case fail, under either the horizontal or the ver-

tical commonality tests, to qualify as common enterprises. Therefore, these accounts are not "investment contracts" within the *Howey* definition, and are not "securities" under the 1933 Act. Thus, all remaining claims shall be dismissed, and plaintiffs' Motion to Amend shall be denied as futile. A separate Order will be entered to that effect.