Samuel A. Spiegel, J.
Motions bearing calendar Nos. 42 and 51 of October 3, 1975 are consolidated for the purpose of disposition.
The defendant Monex International, Ltd. (hereinafter "Monex”) seeks an order vacating the preliminary injunction entered by this court on July 29, 1974, on the ground, inter alia, that jurisdiction over the subject matter of this proceeding has been pre-empted by the Commodity Exchange Act (US Code, tit 7, § 1 et seq.) as amended by the Commodity Futures Trading Commission Act of 1974 (CFTCA) (US Code, tit 7, §§ l-17b [eff April 21, 1975]). By a separate application the movant has secured a temporary restraining order staying a hearing, which was scheduled to commence on September 8, 1975, before a Special Referee of this court appointed to hear and report together with recommendations regarding whether the movant has willfully violated the aforesaid order of July 29, 1974. The Commodity Futures Trading Commission (CFTA) — an agency created by the purportedly pre-emptive legislation — moves for leave to participate in this action, amicus curiae, and that application is granted.
The plaintiffs, The People of the State of New York, in their underlying causes of action seek a permanent injunction restraining the defendants from engaging in the securities business in violation of the Martin Act (General Business Law, art 23-A). Monex, a California corporation, allegedly is a supplier of silver and gold coins and bullion and purports to sell such commodities outright and on margin pursuant to standardized contracts. The company conducts business throughout the United States and in foreign countries and its sales in 1974 exceeded $300,000,000. In 1973 prior to the injunction imposed by the court’s order of July 29, 1974, Monex’ sales in New York State alone exceeded $23,000,000.
The plaintiffs’ complaint, by the Attorney-General, specifically alleges that Monex, from in and about 1971, offered for sale and sold to the public generally within the State of New York many millions of dollars worth of securities in the form of bags totaling $1,000 in face value United States silver coins (minted prior to 1965) and other precious metals on margin. In conjunction with such sales the complaint alleges that Monex made numerous false, fraudulent, untrue, and misleading representations for the purpose of fraudulently inducing the public to purchase the aforesaid securities from the defendants. Among such misrepresentations charged by the plaintiff was the concealment by Monex from its purchasers *322 that coins and other commodities purchased by its margin customers were not immediately purchased by Monex and available for delivery to its customers, for Monex purchased futures contracts to cover at least 85% of its customers’ margin contracts, and only 10 to 15% of Monex’ contracts were covered by coins and other commodities on hand and available for immediate delivery.
In granting the plaintiffs’ application for the preliminary injunction now sought to be vacated, the court, in its decision of July 25, 1974 concluded "that more than 90 per cent of the [defendants’] sales of silver coins are made by what is described as 'a variable margin purchase’ where the customer pays approximately 35 per cent of the market price for the silver coins and the balance when he wants to take delivery of the coins.” (People v Monex Int, NYLJ, July 26, 1974, p 2, col 3). Although the Attorney-General argued in support of its application for a preliminary injunction that that financing procedure and the related sales techniques employed by Monex represented securities transactions within the context of the Martin Act, Monex contended that its variable margin sales were not sales of securities, and therefore not subject to regulation under that statute. In its July 25, 1974 decision, the court rejected Monex’ contention and concluded that the specified sales represented investment contracts, and as such were indeed securities transactions within the purview of the Martin Act. (Citing Securities Exch. Comm. v Howey Co., 328 US 293; Maheu v. Reynolds & Co., 282 F Supp 423; Berman v Orimex Trading, 291 F Supp 701; Matter of Waldstein, 116 Misc 763; 1 Loss, Securities Regulation [2d ed, 1961], pp 489, 491.)
The finding that Monex’ sales represent securities transactions constitutes the law of the case herein (Mann v Simpson & Co., 286 NY 450; Morse v Morse Dry Dock & Repair Co., 249 App Div 764; Werthner v Olenin, 186 Misc 829, affd 272 App Div 798), and, in any event, for the purpose of this application Monex does not specifically dispute that its sales transactions are securities transactions. Rather Monex contends that by virtue of the recent passage of the CFTCA, State law has been pre-empted, and consequently this court no longer has jurisdiction to regulate the business conducted by Monex and like firms, i.e., the selling on margin of gold and silver coins and bullion pursuant to standardized contracts.
Parenthetically, it should be noted that after the Attorney- *323 General secured the preliminary injunction against Monex in this proceeding, an action was brought by the Securities and Exchange Commission on December 12, 1974 in the United States District Court for the Central District of California (Securities Exch. Comm, v Monex, US Dist Ct, Cent Dist of Cal, No. CV 74-3634-HP) against Monex for purportedly engaging in activities in violation of the securities laws. A temporary restraining order was obtained in that action by the SEC, with Monex’ consent, restraining Monex from engaging in securities transactions in a fraudulent manner or without compliance with applicable Federal securities law. On August 20, 1975 that temporary restraining order was, with certain modifications, made final.
With regard to the purportedly pre-emptive jurisdiction established by the Commodity Act, the act (US Code, tit 7, § 2), after defining certain words and phrases such as "contract of sale,” "commodity” and "Board of Trade,” goes on to provide in pertinent part: "the Commission [CFTCA] shall have exclusive jurisdiction with respect to accounts, agreements * * * and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market * * * or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 15a of this title: And * * * except as hereinabove provided, nothing contained in this section shall (i) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State, or (ii) restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws. Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State.” (Emphasis added.)
Section 15a of title 7 of the United States Code provides in part: "(a) No person shall offer to enter into, enter into, or confirm the execution of any transaction for the delivery of silver bullion, gold bullion, or bulk silver coins or bulk gold coins, pursuant to a standardized contract commonly known to the trade as a margin account, margin contract, leverage account, or leverage contract contrary to any rule, regulation, or order of the Commodity Futures Trading Commission designed to insure the financial solvency of the transaction or prevent manipulation or fraud”.
*324 Simply stated Monex contends, inter alia, that since its business falls squarely within the scope of section 15a of title 7 of the United States Code, its regulation is within the "exclusive jurisdiction” of the CFTA by virtue of the above-quoted language of section 2 of title 7 of the United States Code. The Attorney-General suggests that subdivisions (i) and (ii) of section 2 sufficiently qualify the "exclusive jurisdiction” extended to the CFTA so as to enable the Attorney-General to pursue enforcement of the Martin Act against Monex. Those subdivisions, however, are themselves qualified by the words "except as hereinabove provided” which refer to the grant of "exclusive jurisdiction” to the CFTC.
It has traditionally been held that the language in a legislative enactment will be construed in accordance with its plain terms and most obvious sense, without resorting to artificial or forced construction (McKinney’s Cons Laws of NY, Book 1, Statutes, § 94). An examination of the pertinent provisions of the CFTCA (US Code, tit 7, §§ 2, 15a) reveals an apparent legislative intent to extend to the CFTA exclusive jurisdiction over contracts for sale of commodities for future delivery and transactions for the delivery of silver and gold coins and bullion pursuant to margin contracts. It would further appear, by virtue of the broad language utilized by the CFTCA, that this jurisdiction would include not only such sales per se but also such sales, as those of Monex, representing securities transactions (SEC v Univest, CCH Commodity Futures L Rep, § 20,116). Nonetheless the applicable provisions of the CFTCA (US Code, tit 7, §§ 2, 15a) are not altogether clear as to whether such latter transactions indeed fall within the exclusive jurisdiction of the CFTA.
In this regard, securities authorities such as the SEC and the State of New York, under the Martin Act, may claim at least concurrent jurisdiction to regulate such transactions as securities (cf. SEC v Univest, supra). In its memorandum of law submitted herein, amicus curiae, the CFTA, by implication, asserts its exclusive jurisdiction over sales of silver and gold coins and bullion pursuant to margin contracts, albeit constituting securities transactions, by observing that inasmuch as "this court has concluded that transactions of the type described in Section 217 [US Code, tit 7, § 15a] would — at least in the absence of that provision — be viewed as 'securities’ under Article 23-A * * * there is some risk that the State of New York might seek to enforce the preliminary injunction to *325 compel Monex to obey regulatory requirements that have been preempted by the 1974 Act [CFTCA].”
The respective submissions of the parties herein, including that of the CFTA, have conspicuously failed to join issue upon what may ultimately prove to be a substantial jurisdictional dispute between the CFTA and securities authorities, i.e., the authority to regulate what may in form be margin sales of gold and silver coins and bullion, but in substance be sales of securities. In view of the failure of the parties to either identify the elements of that issue or define their positions in regard thereto, the problem remains largely an abstract one and one, for reasons hereinafter indicated, not of immediate concern in this action.
Notwithstanding the scope of the jurisdiction extended to the CFTA, the legislative history of the CFTCA clearly indicates that it was not intended that the act abate pending proceedings. The Commodity Act only became effective April 21, 1975, and of paramount consideration was the avoidance of any "regulatory gaps” which might potentially result from the specified legislation. Thus, the floor managers (Senator Talmadge and Representative Poage) of the bill proposing the CFTCA in both Houses of Congress unequivocally stated: "all pending proceedings, including ongoing investigations, as well as court proceedings, should continue unabated by any provision of the act. This is also necessary to prevent the creation of any regulatory gaps * * * During the course of our deliberations, we learned, for example, that the SEC has a number of such matters currently under investigation. We would expect that those investigations will continue and any proceeding resulting therefrom will not be affected by the passage of this Act.” (120 Cong Rec H 10248, Daily Ed, Oct. 9, 1974; 120 Cong Rec S 18866, Daily Ed, Oct. 10, 1974.) (Cf. SEC v Univest, CCH Commodity Futures L Rep, § 20,116; Pub L 93-463, § 411 [— US Stat —].) Furthermore, it need hardly be pointed out that Monex continues to be bound by the final judgment entered August 20, 1975 — months after the effective date of the CFTCA — in the SEC.’s action against Monex in the United States District Court, Central District of California. It would be anomalous to abate this proceeding against Monex, when the SEC. prosecuted its action against Monex to a final judgment, albeit a consent judgment, after the effective date of the CFTCA. The CFTA, in its amicus brief, supports a continuation of the preliminary injunction sought to be vacated by the *326 movant, and in spite of certain inconsistencies reflected in CFTA’s memorandum of law, its support of a continuation of the preliminary injunction is entitled to some weight. Accordingly, in accordance with the foregoing Monex’ application for an order vacating the preliminary injunction entered by this court on July 29, 1974 is denied.
Even had Monex’ application been granted, the plaintiffs would be entitled to resolution of their prior application for a contempt citation against Monex predicated upon its alleged violation of the preliminary injunction of July 29, 1974. That application is directed to continue before the Special Referee of this court, to whom it has been referred.
In addition, the nature of this action is such that further unnecessary delay in its prosecution may unduly prejudice the defendant. In the event, therefore, that plaintiffs fail to proceed expeditiously with their prosecution of the underlying action, the defendant may move the court for appropriate relief.